B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>ROSENDO GONZALEZ, Chapter 7 Trustee, | DEFENDANTS<br>DAVID W. MACMILLAN and CYNTHIA B. MARTIN,<br>as co-trustees of the David MacMillan Residence Trust<br>established March 2, 2015 and the Cynthia B. Martin<br>Residence Trust established March 2, 2015 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>DUMAS & KIM, APC.<br>3435 WIlshire Blvd., Ste. 990<br>Los Angeles, CA 90010<br>213/368-5000 Fax: 213/368-5009 | ATTORNEYS (If Known)<br>Robert S Altagen<br>Law Offices of Robert S Altagen<br>1111 Corporate Ctr Dr #201<br>Monterey Park, CA 91754 |
| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☑ Trustee | PARTY (Check One Box Only)<br>☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)

**COMPLAINT FOR FRAUDULENT TRANSFER AND DECLARATORY
RELIEF [11. U.S.C. §§ 105, 541, 548 and 28 U.S.C. §2201, and California Civil Code Sections
3439 et seq. and Probate Code §15304]**

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) - Recovery of Money/Property**
[ ]  11-Recovery of money/property - §542 turnover of property
[ ]  12-Recovery of money/property - §547 preference
[ X ] 13-Recovery of money/property - §548 fraudulent transfer
[ ]  14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ]  21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ]  31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ]  41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ]  51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ]  66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ]  62-Dischargeability - §523(a)(2), false pretenses,
        false representation, actual fraud
[ ]  67-Dischargeability - §523(a)(4), fraud as fiduciary,
        embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
[ ]  61-Dischargeability - §523(a)(5), domestic support
[ ]  68-Dischargeability - §523(a)(6), willful and malicious injury
[ ]  63-Dischargeability - §523(a)(8), student loan
[ ]  64-Dischargeability - §523(a)(15), divorce or separation obligation
        (other than domestic support)
[ ]  65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ]  71-Injunctive relief - imposition of stay
[ ]  72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ]  81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ]  91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ]  01-Determination of removed claim or cause

**Other**
[ ]  SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
[ ]  02-Other (e.g. other actions that would have been brought in state
        court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ **According to Proof** |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| | | BANKRUPTCY CASE NO. |
| | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| /s/ James A. Dumas | |

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| September 26, 2017 | James A. Dumas |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

James A. Dumas (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
3435 Wilshire Blvd., Ste. 990
Los Angeles, CA 90010
Telephone: 213/368-5000
Facsimile: 213/368-5009

Attorneys for the Chapter 7 Trustee,
Rosendo Gonzales

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>DAVID MACMILLAN,<br><br>    Debtors.<br><hr><br>ROSENDO GONZALEZ, Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>    vs.<br><br>DAVID W. MACMILLAN and CYNTHIA B. MARTIN, as co-trustees of the David MacMillan Residence Trust established March 2, 2015 and the Cynthia B. Martin Residence Trust established March 2, 2015<br><br>    Defendants. | Case No.: 2:16-bk-21559-NB<br><br>Substantively Consolidated with<br>Case No.: 2:17-bk-11588-NB<br><br>Adversary No.:<br><br>[Honorable Neil W. Bason]<br><br>**COMPLAINT FOR FRAUDULENT TRANSFER AND DECLARATORY RELIEF**<br><br>**[11. U.S.C. §§ 105, 541, 548 and 28 U.S.C. §2201, and California Civil Code Sections 3439 et seq. and Probate Code §15304]** |

COMES NOW, Plaintiff and Chapter 7 Trustee Rosendo Gonzalez ("Trustee" or "Plaintiff"), as and

for his Complaint herein, complains and alleges as follows:

1

# I.

## THE PARTIES AND JURISDICTION

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and this is a core proceeding under 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), or 157(b)(2)(E).  In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims.  Venue in the Central District of California, Los Angeles Division (the "Bankruptcy Court"), is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of David Macmillan bearing case number Case No.: 2:16-bk-21559-NB, which has been substantively consolidated with the case of Cynthia B. Martin, Case No.: 2:17-bk-11588-NB. The consolidated cases are presently pending under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 because this is a civil proceeding arising in and/or related to the debtors, David Macmillan and Cynthia Martin, and their Chapter 7 case.

2.    The Plaintiff Rosendo Gonzalez is the duly appointed and acting Chapter 7 bankruptcy trustee for the estate of David Macmillan ("Debtor")

3.    Defendant David W. Macmillan, ("Macmillan"), is a debtor herein and is, and at all times mentioned herein, was a trustee of both the David MacMillan Residence Trust ("Macmillan Trust") established March 2, 2015 and the Cynthia B. Martin Residence Trust ("Martin Trust") also established March 2, 2015.

4.    Defendant Cynthia B. Martin, ("Martin"), is a debtor herein, and at all times alleged herein, is and was a trustee of both the MacMillan Trust and the Martin Trust.

COMPLAINT FOR FRAUDULENT TRANSFER AND DECLARATORY RELIEF

5.      Debtor David W. Macmillan commenced the within bankruptcy case by filing a

voluntary petition under Chapter 11 of the Bankruptcy Code on August 30, 2016. ("Petition Date")

The case was converted to a case under Chapter 13 by a notice dated November 4, 2016, and then

converted to a case under Chapter 7 by an order dated April 12, 2017. Cynthia Martin commenced

her case by filing a Chapter 13 petition on February 9, 2017. She converted the case to Chapter 7 on

April 12, 2017. The two cases were consolidated by an order entered on September 19, 2017.

## II.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

6.      Plaintiff refers to the allegations set forth in paragraph 1 through 5 hereof and

incorporates said allegations herein as if fully set forth hereat.

7.      On April 30, 2008 Macmillan and Martin purchased the property located at 201

Spindrift Drive, Rancho Palos Verdes, California (the "Sprindrift Property"), to serve as their

personal residence. The Sprindrift Property was initially held by "David W. Macmillan and Cynthia

B. Martin, Husband and Wife, as Community Property with Right of Survivorship."

8.      On January 26, 2012, a quit claim deed was recorded whereby the Spindrift Property

was transferred to "David Macmillan and Cindy Martin as Trustees of the David Macmillan and

Cindy Martin Family Trust dated June 11, 2011 (the "2011 Trust"). The grant deed recited that the

transfer was for "no consideration." The 2011 Trust was a revocable *inter vivos* trust and the transfer

of the Spindrift Property to it had no effect on the ability of creditors of Macmillan and Martin to

execute against the property.

9.      On March 25, 2015, a series of instruments were recorded with respect to the Spindrift

Property. First, Macmillan and Martin, in their capacities as the trustees for the 2011 trust, executed a

grant deed transferring the property to the two of them "as community property with right of

survivorship." They then jointly executed grant deeds transferring 50% of the property to each of

them as their "sole and separate property." Macmillan lastly transferred his 50% interest to "David

Macmillan and Cynthia B. Martin, as trustees for the 'David MacMillan Residence Trust'" (i.e. the

3

1   Macmillan Trust) and Martin transferred her 50% interest to the "David Macmillan and Cynthia B.

2   Martin, as trustee for the 'Cynthia B. Martin Residence Trust'" (i.e. the Martin Trust). True and

3   correct copies of the grant deeds transferring the 50% interests in the property to the Macmillan and

4   Martin trusts are attached hereto as **Exhibits A and B** and incorporated herein by reference. The

5   Macmillan Trust and the Martin Trusts purported to have been created on the same day that the

6   foregoing instruments were executed: March 2, 2015. In contrast to the 2011 Trust, these new trusts

7   purported to be irrevocable.

8       10.     The transfers that were recorded on March 25, 2015, were in effect a transfer of the

9   Spindrift Property from community property of the marriage of Macmillan and Martin, available to

10  be executed against by their creditors, to the property of two allegedly irrevocable trusts which were

11  purportedly beyond the reach of their creditors.

12      11.     No consideration was provided for the transfer of the Spindrift Property to the

13  Macmillan Trust and the Martin Trust.

14      12.     The Macmillan and Martin Trusts are "self-settled trusts." The Trust Agreements are

15  attached hereto as **Exhibits C and D** and incorporated herein by reference. They provide, *inter alia,*

16  that Macmillan and Martin can continue to live in the Spindrift Property rent-free and to control the

17  property as if they remained on title to it. They are entitled to any income from the property and can

18  borrow money from the trust without paying interest. Upon their deaths, the property reverts to the

19  2011 Trust. Macmillan and Martin are, of course, the only trustees of the trusts. Until they die, no

20  party can exercise control over trust assets unless they so decide. Although not named as

21  beneficiaries of the trusts, only in the case of their deaths or because they choose to confer benefits on

22  third parties, can any party receive any benefits from the trusts or opportunity to enjoy trust assets

23  other than Macmillan and Martin. Lastly, the Trust Agreements both contain spendthrift provisions

24  which purport to prevent any creditor of Macmillan and Martin from executing against trust assets or

25  benefits.

26      13.     As of March 25, 2015, Macmillan and Martin were the subject of creditor claims and

27  regulatory actions that they knew or should have known would result in an eventual attempt by

28  creditors to execute against the Spindrift Property.

COMPLAINT FOR FRAUDULENT TRANSFER AND DECLARATORY RELIEF

1    14.    In the Schedules of Assets and Statement of Affairs filed in their respective

2  bankruptcies, Macmillan and Martin testified that they had no interests in real property and that they

3  had transferred the Spindrift Property to "self-settled" trusts in 2015.

4

5                                             **III.**

6              **FIRST CLAIM FOR RELIEF TO AVOID FRAUDULENT TRANSFERS**

7              **(11 U.S.C. §§ 105, 541, 548, and California Civil Code §§3439 et seq.)**

8                              **(Against All Defendants)**

9

10   15.    Plaintiff refers to the allegations set forth in paragraph 1 through 14 hereof and

11  incorporates said allegations herein as if fully set forth hereat.

12   16.    Effective March 25, 2015, Macmillan and Martin transferred their community

13  property interests in the Spindrift Property to themselves in their capacities as trustees for the

14  Macmillan and Martin Trusts, without receiving reasonably equivalent value in exchange.

15   17.    The effect of these transfers was that the value of the remaining assets of the

16  Macmillan and Martin community estate was unreasonably small in relation to the known and

17  reasonably anticipated debts of the debtors as they existed at the time of the transfer and as they could

18  expect to arise from the business they were conducting. The transfers thereafter rendered the Debtors

19  incapable of paying their debts as they fell due.

20   18.    The transfers were undertaken by Macmillan and Martin with the actual intent to

21  hinder, delay, and defraud their creditors.

22   19.    Plaintiff is entitled to a judgment avoiding the transfers and/or a money judgment

23  against each defendant equal to the value of the assets transferred.

24   20.    Plaintiff is further entitled to an award of exemplary and punitive damages according

25  to proof.

26  ////

27  ////

28  ////

COMPLAINT FOR FRAUDULENT TRANSFER AND DECLARATORY RELIEF

## IV.

## SECOND CLAIM FOR RELIEF SEEKING A DECLARATORY JUDGMENT

## (11 U.S.C. §541 and 28 U.S.C. §2201 and California Probate Code §15304)

## (Against All Defendants)

21.    Plaintiff refers to the allegations set forth in paragraph 1 through 14 hereof and incorporates said allegations herein as if fully set forth hereat.

22.    An actual controversy exists as to whether, notwithstanding the express language of the Trust Agreements, Macmillan and Martin are in fact "beneficiaries" of the trust for purposes of California Probate Code §15304. Their status as "beneficiaries" determines whether provisions of said statute are applicable to them and are decisive on the question of whether the benefits that accrue to them pursuant to the Trust Agreements are property of the bankruptcy estate pursuant to 11 U.S.C. §541. The answer to these questions further raises an issue as to whether the Macmillan and Martin Trusts are valid "self-settled trusts" under California law.

23.    Plaintiff asks the Court for a declaratory judgment pursuant to 11 U.S.C. §2201 determining whether (1) Macmillan and Martin are "beneficiaries" of the trusts for purposes of Probate Code section §15304; (2) whether the benefits they receive pursuant to the trusts are "property of the estate" under 11 U.S.C. §541; and (3) whether the trusts are valid "self-settled trusts" under California law.

## V.

## PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

## ON THE FIRST CLAIM FOR RELIEF:

1.    For a judgment against all defendants avoiding the transfer of the Spindrift Property to defendants and/or for a monetary judgment equal to the current value of the assets transferred;

COMPLAINT FOR FRAUDULENT TRANSFER AND DECLARATORY RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ON THE SECOND CLAIM FOR RELIEF:**

2.    For a judgment, as to all defendants declaring whether (1) defendants Macmillan and Martin are "beneficiaries" of the Macmillan and Martin Trusts for purposes of Probate Code section §15304; (2) whether the benefits they receive through the trusts are "property of the estate" under 11 U.S.C. §541; and (3) whether the trusts are valid "self-settled trusts" under California law.;

**ALL CLAIMS FOR RELIEF:**

3.    For prejudgment interest;

4.    For costs of suit; and

5.    For such other relief as the Court deems just and proper.

Dated: September 26, 2017            DUMAS & KIM, APC

By
James A. Dumas,
Attorneys for Plaintiff and Chapter 7 Trustee,
Rosendo Gonzalez

7

COMPLAINT FOR FRAUDULENT TRANSFER AND DECLARATORY RELIEF

# EXHIBIT "A"

# EXHIBIT "A"



**This page is part of your document - DO NOT DISCARD**



## 20150321817



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/25/15 AT 10:25AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**

201503253290019

00010326019

006717749

**SEQ:**
**01**

DAR - Courier (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E447050

**RECORDING REQUESTED BY:**
ALBRECHT & BARNEY (CM)
1 Park Plaza, Ste. 900
Irvine, California  92614

03/25/2015

*20150321817*

**WHEN RECORDED, MAIL TO:**
Mr. David MacMillan
Ms. Cynthia B. Martin
201 Spindrift Drive
Rancho Palos Verdes, California  90275

(Space Above For Recorder's Use)
APN: 7572-021-055

## GRANT DEED

THE UNDERSIGNED GRANTORS declare:

Documentary Transfer Tax is $NONE.
No consideration given.  This conveyance transfers the grantors' interest from their revocable living trust.  Conveyance is tax-exempt under California Revenue & Taxation Code Section 11930.

FOR NO CONSIDERATION, DAVID MacMILLAN and CYNTHIA B. MARTIN, also known as CINDY MARTIN, as Co-Trustees of THE DAVID MacMILLAN AND CINDY MARTIN FAMILY TRUST, established June 15, 2011, hereby grant to DAVID MacMILLAN and CYNTHIA B. MARTIN, husband and wife, as community property with right of survivorship, the real property in the County of Los Angeles, State of California, described as follows:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND
INCORPORATED HEREIN BY THIS REFERENCE

Commonly known as:  201 Spindrift Drive, Rancho Palos Verdes, California

Dated: MARCH 2, 2015

David MacMillan, Trustee

Dated: MARCH 2, 2015

Cynthia B. Martin, Trustee

MAIL TAX STATEMENTS TO:
Mr. David MacMillan and Ms. Cynthia B. Martin, 201 Spindrift Drive, Rancho Palos Verdes, California  90275

E:\EP\31939\1\STPLAN\SPINDRIFT(1).DED

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF ORANGE             )

On _MARCH 2, 2015_ , before me, _MATTHEW ROSS HINES_ , 
Notary Public, personally appeared DAVID MacMILLAN and CYNTHIA B. MARTIN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MATTHEW ROSS HINES
Commission # 2056767
Notary Public - California
Orange County
My Comm. Expires Feb 2, 20`8

_____
Signature of Notary Public

(SEAL)

## CAPACITY(IES) CLAIMED BY SIGNER(S):

[X]  Individual(s)                    [ ]  Attorney-In-Fact
[ ]  Partner(s)                       [ ]  Subscribing Witness
[ ]  Trustee(s)                       · [ ]  Guardian/Conservator
[ ]  Corporate _____        [ ]  Other:_____
     Officer(s) _____       _____
                    Title(s)          _____

## SIGNER IS REPRESENTING:

Name of Person(s)
or Entity(ies):          **DAVID MacMILLAN and CYNTHIA B. MARTIN**

Name of Instrument:      **GRANT DEED**

11

# Exhibit "A"

Parcel 1.

Lot 201-LA

Lots 114-A and 201 of L. A. C. A. Map No. 64, in the City of Rancho Palso Verdes, in the County of Los Angeles, State of California, as per Map filed in Book 1 Pages 12 through 16 inclusive of Assessor's Maps, in the Office of the County Recorder of said County and the Northwesterly 1.50 feet of Lot 114 of said Map, as provided in the Certificate of Compliance recorded January 13, 1987 as Instrument No. 87-48071, Official Records.

Parcel 2·

Except therefrom those certain non-exclusive easements more particularly reflected within Exhibit "D" (to be reserved) of those certain Declaration of Covenants, Conditions and Restrictions recorded January 20, 1987, as Instrument No. 87-78057, Official Records.

Those certain non-exclusive easements more particularly reflected within Exhibit "C" (to be granted) of those certain Declaration of Covenants, Conditions and Restrictions recorded January 20, 1987 as Instrument No 87-78057, Official Records.

# EXHIBIT "B"

# EXHIBIT "B"



**This page is part of your document - DO NOT DISCARD**



## 20150321819



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/25/15 AT 10:25AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**LEADSHEET**



201503253290019

00010326021



006717749

**SEQ:**
**03**

DAR - Courier (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

14

RECORDING REQUESTED BY:
ALBRECHT & BARNEY (CM)
1 Park Plaza, Ste. 900
Irvine, California 92614



03/25/2015

*20150321819*

WHEN RECORDED, MAIL TO:
Mr. David MacMillan
Ms. Cynthia B. Martin
2239 W. 190th Street
Torrance, California 90504

_____

(Space Above For Recorder's Use)

APN: 7572-021-055

## GRANT DEED

THE UNDERSIGNED GRANTOR declares:

Documentary Transfer Tax is $NONE.
No consideration given.  This conveyance transfers the grantor's interest into a trust for the
benefit of the grantor.  Conveyance is tax-exempt under California Revenue & Taxation Code
Section 11911.

FOR NO CONSIDERATION, DAVID MacMILLAN, a married man as his sole and separate
property, does hereby grant to DAVID MacMILLAN and CYNTHIA B. MARTIN, as
Co-Trustees of the DAVID MacMILLAN RESIDENCE TRUST, established
_MARCH 2, 2015_____, an undivided fifty percent (50%) interest in the following real
property in the County of Los Angeles, State of California, described as follows:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND
INCORPORATED HEREIN BY THIS REFERENCE

Commonly known as:  201 Spindrift Drive, Rancho Palos Verdes, California

Dated: _MARCH 2, 2015_                      _____
                                                                   David MacMillan

MAIL TAX STATEMENTS TO:
Mr. David MacMillan and Ms. Cynthia B. Martin, 201 Spindrift Drive, Rancho Palos Verdes,
California 90275

E:\EP31939\ESTPLAN\SPINDRIFT(3).DED

15

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF ORANGE             )

On _MARCH 2, 2015_, before me, _MATTHEW ROSS HINES_, Notary Public, personally appeared DAVID MACMILLAN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

　　　I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

　　　WITNESS my hand and official seal.



MATTHEW ROSS HINES
Commission # 2056767
Notary Public - California
Orange County
My Comm. Expires Feb 2, 2018

_____
Signature of Notary Public

(SEAL)

## CAPACITY(IES) CLAIMED BY SIGNER(S):

[X]  Individual(s)                      [ ]  Attorney-In-Fact
[ ]  Partner(s)                         [ ]  Subscribing Witness
[ ]  Trustee(s)                         [ ]  Guardian/Conservator
[ ]  Corporate _____           [ ]  Other:_____
     Officer(s) _____          _____
                    Title(s)            _____

## SIGNER IS REPRESENTING:

Name of Person(s)
or Entity(ies):        **DAVID MacMILLAN**

Name of Instrument:    **GRANT DEED**

16

# Exhibit "A"

Parcel 1.

Lot 201-LA

Lots 114-A and 201 of L. A. C. A. Map No. 64, in the City of Rancho Palso Verdes, in the County of Los Angeles, State of California, as per Map filed in Book 1 Pages 12 through 16 inclusive of Assessor's Maps, in the Office of the County Recorder of said County and the Northwesterly 1.50 feet of Lot 114 of said Map, as provided in the Certificate of Compliance recorded January 13, 1987 as Instrument No. 87-48071, Official Records.

Parcel 2.

Except therefrom those certain non-exclusive easements more particularly reflected within Exhibit "D" (to be reserved) of those certain Declaration of Covenants, Conditions and Restrictions recorded January 20, 1987, as Instrument No. 87-78057, Official Records.

Those certain non-exclusive easements more particularly reflected within Exhibit "C" (to be granted) of those certain Declaration of Covenants, Conditions and Restrictions recorded January 20, 1987 as Instrument No 87-78057, Official Records.



**This page is part of your document - DO NOT DISCARD**

## 20150321820





**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/25/15 AT 10:25AM**

| | |
|---|---:|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201503253290019

00010326022



006717749

**SEQ:**
**04**

DAR - Courier (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E441959

RECORDING REQUESTED BY:
ALBRECHT & BARNEY (CM)
1 Park Plaza, Ste. 900
Irvine, California 92614



03/25/2015

*20150321820*

WHEN RECORDED, MAIL TO:
Mr. David MacMillan
Ms. Cynthia B. Martin
2239 W. 190th Street
Torrance, California 90504

_____
(Space Above For Recorder's Use)

APN: 7572-021-055

## GRANT DEED

THE UNDERSIGNED GRANTOR declares:

Documentary Transfer Tax is $NONE.
No consideration given. This conveyance transfers the grantor's interest into a trust for the benefit of the grantor. Conveyance is tax-exempt under California Revenue & Taxation Code Section 11911.

FOR NO CONSIDERATION, CYNTHIA B. MARTIN, a married woman as her sole and separate property, does hereby grant to DAVID MacMILLAN and CYNTHIA B. MARTIN, as Co-Trustees of the CYNTHIA B. MARTIN RESIDENCE TRUST, established _MARCH 2, 2015_____, an undivided fifty percent (50%) interest in the following real property in the County of Los Angeles, State of California, described as follows:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND
INCORPORATED HEREIN BY THIS REFERENCE

Commonly known as: 201 Spindrift Drive, Rancho Palos Verdes, California


Dated: _MARCH 2, 2015_          _Cynthia B. Martin_ (signature)
                                Cynthia B. Martin



MAIL TAX STATEMENTS TO:
Mr. David MacMillan and Ms. Cynthia B. Martin, 201 Spindrift Drive, Rancho Palos Verdes, California 90275

E:\EP31939\ESTPLAN\SPINDRIFT(4).DED

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF ORANGE )

On *MARCH 2, 2015*, before me, *MATTHEW ROSS HINES*, Notary Public, personally appeared CYNTHIA B. MARTIN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MATTHEW ROSS HINES
Commission # 2056767
Notary Public - California
Orange County
My Comm. Expires Feb 2, 2018

_____
Signature of Notary Public

(SEAL)

## CAPACITY(IES) CLAIMED BY SIGNER(S):

[X]  Individual(s)                    [ ]  Attorney-In-Fact
[ ]  Partner(s)                       [ ]  Subscribing Witness
[ ]  Trustee(s)                       [ ]  Guardian/Conservator
[ ]  Corporate _____        [ ]  Other:_____
     Officer(s) _____       _____
                    Title(s)         _____

## SIGNER IS REPRESENTING:

Name of Person(s)
or Entity(ies):          **CYNTHIA B. MARTIN**

Name of Instrument:      **GRANT DEED**

# Exhibit "A"

Parcel 1.

Lot 201-LA

Lots 114-A and 201 of L. A. C. A. Map No. 64, in the City of Rancho Palso Verdes, in the County of Los Angeles, State of California, as per Map filed in Book 1 Pages 12 through 16 inclusive of Assessor's Maps, in the Office of the County Recorder of said County and the Northwesterly 1.50 feet of Lot 114 of said Map, as provided in the Certificate of Compliance recorded January 13, 1987 as Instrument No. 87-48071, Official Records.

Parcel 2:

Except therefrom those certain non-exclusive easements more particularly reflected within Exhibit "D" (to be reserved) of those certain Declaration of Covenants, Conditions and Restrictions recorded January 20, 1987, as Instrument No. 87-78057, Official Records.

Those certain non-exclusive easements more particularly reflected within Exhibit "C" (to be granted) of those certain Declaration of Covenants, Conditions and Restrictions recorded January 20, 1987 as Instrument No 87-78057, Official Records.

# EXHIBIT "C"

# EXHIBIT "C"



<u>DAVID MacMILLAN RESIDENCE TRUST</u>

E:\EP\31939\TRUST\DAVID.QPRT

# DAVID MacMILLAN RESIDENCE TRUST

## TABLE OF CONTENTS

Page

**ARTICLE 1**

DECLARATIONS OF TRUST: ............................................................................. 1

| | | |
|---|---|---|
| 1.1 | Principal of Trust ........................................................................ | 1 |
| 1.2 | Declarations Concerning Family ................................................. | 1 |
| 1.3 | Declaration of Grantor's Intent; Certain Amendment Rights ...... | 1 |
| 1.4 | Acceptance of Trust by the Trustee ............................................ | 2 |
| 1.5 | Commutation Prohibited ............................................................ | 2 |
| 1.6 | Property Permitted to be Held in the Trust Estate ..................... | 2 |
| 1.7 | Separate Accounts ..................................................................... | 3 |
| 1.8 | Prohibited Property ................................................................... | 3 |
| 1.9 | Prohibited Transfers ................................................................. | 3 |
| 1.10 | Intent to Create a Grantor Trust .............................................. | 3 |

**ARTICLE 2**

RIGHTS RESERVED TO THE GRANTOR: ................................................. 4

| | | |
|---|---|---|
| 2.1 | Trust to Be Irrevocable ............................................................. | 4 |
| 2.2 | Additions of Assets Other Than Cash ....................................... | 4 |
| 2.3 | Additions of Cash; Excess Cash Amount ................................. | 5 |

**ARTICLE 3**

ADMINISTRATION OF QUALIFIED PERSONAL
RESIDENCE TRUST DURING INITIAL TERM: ....................................... 5

| | | |
|---|---|---|
| 3.1 | Distribution of Trust Estate During the Initial Term as Set Forth in This Article ............................................................................. | 5 |
| 3.2 | Distributions to Grantor ............................................................ | 6 |
| 3.3 | Rent-Free Use of Residence by Grantor .................................... | 6 |
| 3.4 | Cessation of Use of Residence by Grantor ................................. | 6 |
| 3.5 | Sale of Residence; Application of Sale Proceeds ...................... | 6 |
| 3.6 | Damage to or Destruction of Residence; Application of Insurance Proceeds ................................................................................... | 7 |

-i-

Page

3.7    Cessation of All or Part of Trust Estate To Be a Qualified Personal
        Residence Trust ................................................................................................ 7
3.8    Administration After Termination Date ........................................................ 7

ARTICLE 4

    QUALIFIED ANNUITY TRUST: ............................................................................. 8

4.1    Intent to Create Qualified Annuity Trust ................................................. 8
4.2    Effective Date of Annuity ............................................................................ 8
4.3    Trustee Discretion to Defer Commencement of Annuity Payments ........ 8
4.4    Deferred Payments of Annuity Amount to Bear Interest ......................... 8
4.5    Determination of Annuity Amount ............................................................. 8
4.6    Payment of Annuity Amount ....................................................................... 9
4.7    Valuation ........................................................................................................ 9
4.8    Proration of Annuity Amount ...................................................................... 9
4.9    Administration of Annuity Trust After Termination Date ...................... 10

ARTICLE 5

    ADMINISTRATION OF TRUST ESTATE
    UPON TERMINATION DATE: ................................................................................ 10

5.1    Administration of Trust Estate Upon Termination Date As Set Forth in
        This Article .................................................................................................. 10
5.2    Death of Grantor ......................................................................................... 10
5.3    Termination Event Other Than the Death of the Grantor ...................... 11

ARTICLE 6

    ADMINISTRATION OF TRUST ESTATE AFTER
    TERMINATION DATE IF THE GRANTOR IS LIVING: ...................................... 11

6.1    Administration of Trust Estate After Termination Date if the Grantor is
        Living as Set Forth in This Article ........................................................... 11
6.2    No Division .................................................................................................. 11
6.3    Accumulation of Income ............................................................................. 12
6.4    Discretionary Distributions of Principal for the Support of the Children of
        the Grantor .................................................................................................. 12
6.5    Distribution of Trust Estate Upon the Death of the Grantor ................. 12

-ii-

Page

ARTICLE 7

DISTRIBUTION OF TRUST ESTATE AFTER
TERMINATION DATE UPON THE DEATH OF THE GRANTOR: ........................... 12

7.1   Distribution of Trust Estate After Termination Date Upon the Death of the
      Grantor as Set Forth in This Article .................................................. 12
7.2   Division of Trust Estate .................................................................. 12
7.3   Administration of Children's Trusts. ................................................. 13
7.4   Administration of Trusts for Benefit of Issue of Child of Grantor. ....... 14
7.5   Contingent Beneficiaries ................................................................ 15

ARTICLE 8

SUCCESSOR TRUSTEE: ........................................................................... 15

8.1   Successor Trustee .......................................................................... 15
8.2   Trustee of Beneficiaries' Trusts ...................................................... 15
8.3   Exercise of Powers of Trustee if Co-Trustees Are Serving .............. 15
8.4   Power of an Individual Trustee to Designate a Successor Trustee ....... 15
8.5   Right of Trustee to Resign; Appointment of Successor Trustee in the
      Event of a Vacancy ....................................................................... 17
8.6   Declination of a Named Successor Trustee ..................................... 18
8.7   Substitution of Qualified Corporate Trustee ................................... 18
8.8   Effect of Succession of Trustees .................................................... 19
8.9   Powers and Authorities of Successor Trustee ................................. 19
8.10  No Duty of Successor Trustees to Investigate ................................ 19
8.11  Exoneration and Indemnification of Trustee ................................... 19
8.12  Trust Protector ............................................................................. 20

ARTICLE 9

POWERS OF TRUSTEE: ............................................................................ 21

9.1   Powers of Trustee ......................................................................... 21
9.2   Power to Act as Owner .................................................................. 22
9.3   Investment Powers ........................................................................ 22
9.4   Special Provisions While Corporate Trustee Is Acting ..................... 23
9.5   Power to Retain or Abandon Property; Diversification ..................... 24
9.6   Certain Management Powers .......................................................... 25
9.7   Reimbursement of Trustee ............................................................. 25
9.8   Power to Employ ........................................................................... 25

-iii-

Page

9.9    Installment Payments of Income ................................................................. 25
9.10   Segregation, Allocation and Distribution of Assets ................................. 26
9.11   Trust Distributions ................................................................................... 26
9.12   Power to Add Charitable Organization as Beneficiary .......................... 26
9.13   Principal and Income ................................................................................ 27
9.14   Acceptance of Gifts .................................................................................. 27
9.15   Powers Over Securities ............................................................................ 27
9.16   Transactions With Other Entities ........................................................... 28
9.17   Power to Purchase Insurance .................................................................. 29
9.18   Payments to or for Minors or Incapacitated Persons ............................. 29
9.19   Banks and Brokerage Accounts and Endorsements ............................... 29
9.20   Option to Terminate Shares or Trusts .................................................... 30
9.21   Power to Combine and Divide Trusts ...................................................... 30
9.22   Power to Withhold Distribution ............................................................. 31
9.23   Tax Elections ............................................................................................ 31
9.24   Subdivision of Real Property ................................................................... 32
9.25   Purchase at Foreclosure ........................................................................... 32
9.26   Fiduciary Related Party Transactions· .................................................... 32
9.27   Power to Commence, Retain and Manage Closely Held Business ......... 33
9.28   Power Regarding S Corporations ............................................................ 34
9.29   Power Regarding Names of Trusts .......................................................... 34
9.30   Power to Transfer Trust to or from Another Jurisdiction ...................... 35
9.31   Power to Initiate and Defend Litigation; Power to Compromise Claims .......... 35
9.32   Environmental Matters ............................................................................ 35
9.33   Discretion of Trustee ................................................................................ 38
9.34   Power to Disclaim, Restrict or Enlarge Powers of Trustee ................... 38
9.35   Prohibited Trust Powers .......................................................................... 38

ARTICLE 10

TRUST ADMINISTRATION: ........................................................................ 39

10.1   Trust Administrative Provisions Set Forth in This Article .................... 39
10.2   Bond of Trustee ......................................................................................... 39
10.3   Compensation of Trustee ......................................................................... 39
10.4   Profits and Losses Charged to Trust .......................................;............... 39
10.5   Accrued and Undistributed Income ........................................................ 39
10.6   Payment of Expenses ................................................................................ 40
10.7   Disbursements in Good Faith .................................................................. 40
10.8   Disclosure to Third Parties ...................................................................... 40
10.9   Liability for Conduct of Co-Trustees, Predecessor Trustees and Successor
       Trustees .................................................................................................... 40
10.10  Notification to Beneficiaries .................................................................... 40

-iv-

Page

ARTICLE 11

PROVISIONS REGARDING
GENERATION-SKIPPING TRANSFER TAX: ............................................................. 41

11.1    Intention Regarding Generation-Skipping Transfer Tax ...................................... 41
11.2    Duties Regarding Allocation of GST Tax Exemption ......................................... 41
11.3    Creation of Separate Trusts Based Upon Inclusion Ratio ................................... 41
11.4    Power to Grant and Revoke General Testamentary Power of Appointment ....... 41
11.5    Powers and Duties Regarding Payment of GST Tax Liability ........................... 42
11.6    General Powers Regarding GST Tax and Other Considerations ......................... 42
11.7    Successor Trustee for Certain Purposes ............................................................ 43
11.8    Exoneration of Trustee ..................................................................................... 44
11.9    Simultaneous Death .......................................................................................... 44

ARTICLE 12

ACCOUNTINGS: ................................................................................................ 44

12.1    Duty to Account ............................................................................................... 44
12.2    No Court Accounts ........................................................................................... 44
12.3    During the Life of the Grantor ......................................................................... 44
12.4    After the Death of the Grantor ......................................................................... 45
12.5    Predecessor Trustees ........................................................................................ 45
12.6    Receipts, Accounts and Releases ...................................................................... 45
12.7    Settlement of Accounts ..................................................................................... 46
12.8    Limited Waiver of Accounts ............................................................................. 46

ARTICLE 13

NO CONTEST CLAUSE: ..................................................................................... 46

13.1    General ............................................................................................................. 46
13.2    No Contest Clause Definitions .......................................................................... 47
13.3    Authorization of Trustee ................................................................................... 49
13.4    Costs of Defenses Charged Against Contesting Beneficiary ............................. 49

-v-

Page

ARTICLE 14

    GENERAL TRUST PROVISIONS: .................................................................... 49

    14.1   Termination ......................................................................................... 49
    14.2   Spendthrift Provision ......................................................................... 50
    14.3   Invalidity ............................................................................................ 50
    14.4   Governing Law .................................................................................. 51
    14.5   No Intent to Create Mutual Trusts ..................................................... 51
    14.6   Disclaimers ........................................................................................ 51
    14.7   Headings and Captions ....................................................................... 51
    14.8   Cross-References ................................................................................ 51
    14.9   Notices ............................................................................................... 51

ARTICLE 15

    DEFINITIONS AND RULES OF CONSTRUCTION: .................................................. 52

    15.1   Definitions Set Forth in This Article ................................................. 52
    15.2   Annuity Amount ................................................................................ 52
    15.3   Beneficiary ........................................................................................ 52
    15.4   Corporate Trustee .............................................................................. 52
    15.5   Education ............................................................................................ 52
    15.6   Gender or Number ............................................................................. 53
    15.7   Incapacity .......................................................................................... 53
    15.8   Initial Term ........................................................................................ 53
    15.9   Internal Revenue Code ...................................................................... 54
    15.10  Issue; Child; Children ........................................................................ 54
    15.11  Net Income ........................................................................................ 54
    15.12  Or ....................................................................................................... 54
    15.13  Qualified Corporate Trustee .............................................................. 54
    15.14  Spouse ............................................................................................... 55
    15.15  Support, Maintenance and Health ...................................................... 55
    15.16  Survival ............................................................................................. 55
    15.17  Termination Date ............................................................................... 55
    15.18  Termination Event ............................................................................. 55
    15.19  Treasury Regulations ......................................................................... 55
    15.20  Trust .................................................................................................. 55
    15.21  Trust Estate ....................................................................................... 55
    15.22  Trust Protector .................................................................................. 56
    15.23  Trustee .............................................................................................. 56

Page

ARTICLE 16

EXECUTION: ................................................................................................ 56

16.1   Declaration of the Grantor ............................................................. 56
16.2   Name of Trust ................................................................................. 56
16.3   Execution by the Grantor ............................................................... 56
16.4   Execution by the Trustees .............................................................. 56

-vii-

## DAVID MacMILLAN RESIDENCE TRUST

THIS DAVID MacMILLAN RESIDENCE TRUST (the "Trust Agreement") is dated March 2, 2015, for reference purposes only and is entered into between DAVID MacMILLAN (hereinafter called "Grantor"), and DAVID MacMILLAN and CYNTHIA B. MARTIN (hereinafter called "Trustee" or "Trustees"), effective as of the date of execution.

### ARTICLE 1

DECLARATIONS OF TRUST:

1.1    Principal of Trust. The Grantor declares that the Grantor intends to set aside, transfer and deliver to the Trustee the Grantor's interest in the real property listed on the attached Schedule of Property. Subject to the limits contained in Paragraphs 1.5 and 2.3(a) of this Trust Agreement, the Grantor may transfer additional property to the Trustee. The initial principal of the Trust, together with any property that may be later transferred to the Trust and any income thereon, shall be held, administered and distributed by the Trustee as provided herein. The Grantor retains no right, title or interest in any Trust property, except as specifically provided in this Trust Agreement. Except as provided in Paragraph 1.3 and Paragraph 4.1, this Trust Agreement may not be revoked or amended.

1.2    Declarations Concerning Family. The Grantor and CYNTHIA B. MARTIN are married. Any reference to the Grantor's Spouse in this Trust Agreement shall refer to her. The Grantor has two (2) children from a prior marriage, namely KATELYN MacMILLAN, born October 29, 1986; and CARTER MacMILLAN, born April 18, 1989. The Grantor is a permanent resident of the County of Los Angeles, State of California, and is a citizen of the United States of America.

1.3    Declaration of Grantor's Intent; Certain Amendment Rights. The Grantor intends to create by this Trust Agreement a qualified personal residence trust under Internal Revenue Code Section 2702(a)(3)(A)(ii) and under the Regulations promulgated thereunder. Any provision of this Trust Agreement inconsistent with this intention shall be of no effect. The Grantor intends by this Trust to make a completed gift of a vested remainder in the Trust property, subject only to the Grantor's retention of a right to the use of and the income from the Trust during the Initial Term of this Trust (as defined in Paragraph 15.8). The Grantor intends that, except as may be provided expressly herein, the Grantor's interest in this Trust shall give the Grantor only those rights which are ordinarily associated with an income interest in trust for a term for years and that it endows the Grantor with no rights inconsistent therewith. The Trustee shall have the power to amend the terms of this Trust Agreement at any time and in any manner as may be required for the sole purpose of causing this Trust Agreement to comply with

Page 1, DAVID MacMILLAN RESIDENCE TRUST

the requirements of the above-mentioned Internal Revenue Code Section and the Regulations promulgated thereunder, and any such amendment may apply retroactively to the inception of the Trust, if appropriate.

1.4    Acceptance of Trust by the Trustee.  No consideration was or will be given to or by the Trustee for the conveyance or transfer to it of any of the Trust Estate.  The Trustee accepts title to the Trust Estate which is conveyed or transferred to it hereunder, without liability or responsibility for the conditions or validity of that title.  The Trust Estate has been or will be conveyed or transferred to the Trustee in trust, with power of sale, for the uses and purposes and upon the terms herein set forth.  The Trustee agrees to perform the duties of the Trustee and to hold the Trust Estate, the proceeds thereof and any other property which may be later added to the Trust Estate subject to the terms of this Trust Agreement.

1.5    Commutation Prohibited.  During the Initial Term, the Grantor's interest in the Trust Estate may not be commuted (prepaid).

1.6    Property Permitted to be Held in the Trust Estate.  During the Initial Term, the Trust Estate may consist of only the following assets (collectively, "Permitted Property"):

(a)    Residence.  One (1) personal residence of the Grantor (the "Residence"), or fractional interest therein, within the meaning of Regulations Section 25.2702 5(c), whether or not subject to a mortgage, including any improvements or appurtenant structures used by the Grantor for residential purposes.  The Residence shall also include adjacent land not in excess of that which is reasonably appropriate for residential purposes, taking into account the Residence's size and location.  The identity of the real property constituting the Residence may change at any time, and from time to time, as long as such real property otherwise satisfies the requirements of this Paragraph.

(b)    Cash.  Cash, subject to the provisions of Paragraph 2.3(a) concerning additions of cash to the Trust Estate, and specifically excluding Sale Proceeds (as hereafter defined) and Insurance Proceeds (as hereafter defined).

(c)    Sale Proceeds.  Proceeds of the sale of the Residence ("Sale Proceeds"), subject to the provisions of Paragraph 3.5 concerning the application and reinvestment of Sale Proceeds.

(d)    Insurance Policies.  A policy or policies of insurance on the Residence.

(e)    Insurance Proceeds.  Proceeds from the insurance policies in Paragraph 1.6(d) payable to the Trust Estate as a result of damage to the Residence or destruction of the Residence ("Insurance Proceeds"), subject to the provisions of Paragraph 3.6.

(f)    Proceeds from Involuntary Conversion.  Proceeds from the condemnation of the Residence or from any other event which qualifies as an involuntary conversion of the

Page 2, DAVID MacMILLAN RESIDENCE TRUST

Residence under Internal Revenue Code Section 1033. Such proceeds shall be treated as Insurance Proceeds under Paragraph 1.6(e), and shall be held, distributed and administered under Paragraph 3.6.

Notwithstanding the foregoing, if during the Initial Term, any portion of the Trust Estate is converted to a qualified annuity trust, for such portion, Permitted Property shall mean property of the types described in Article 4.

    1.7    <u>Separate Accounts</u>. The Trustee shall hold any proceeds received under any of Paragraphs 1.6(c), (e) or (f) in an account separate from the accounts in which the Trustee holds proceeds received under any of the other such Paragraphs and separate from cash as described in Paragraph 1.6(b).

    1.8    <u>Prohibited Property</u>. During the Initial Term, the Trustee is hereby prohibited from holding as part of the Trust Estate any property other than Permitted Property (including, without limitation, any personal property) unless permitted by the Internal Revenue Code, pronouncements of the Internal Revenue Service or other competent authority.

    1.9    <u>Prohibited Transfers</u>. Notwithstanding any provision of this Trust Agreement to the contrary, during the Initial Term, and any time thereafter that the Residence is held in a Trust created hereunder that is a grantor trust within the meaning of Internal Revenue Code Sections 671-677 and the regulations promulgated thereunder (if ever), the Trustee is prohibited from selling, loaning or transferring the Residence directly or indirectly to the Grantor, the Grantor's Spouse, or any entity controlled (within the meaning of Regulations Section 25.2701-2(b)(5)(ii) and (iii)) by the Grantor or the Grantor's Spouse.

    1.10    <u>Intent to Create a Grantor Trust</u>. It is the intention of the Grantor that, for federal income tax purposes, this Trust shall be treated as a grantor trust (as that term is defined in Sections 671-677 of the Internal Revenue Code) during and after the Initial Term and all provisions of this Trust shall be construed so as to effectuate this intent. In furtherance of this intent, at any time and from time to time, the following powers may be exercised as provided herein:

    (a)    After the Initial Term, the Trustee may add as a Beneficiary of this Trust Agreement as to any portion of the Trust Estate up to the whole thereof, any charitable organization, as such power is further described in Paragraph 9.12.

    (b)    After the Initial Term, the Grantor may borrow any portion of the principal and/or income of the Trust Estate, directly or indirectly, without adequate security, as such power is further described in Paragraph 9.16.

Notwithstanding the foregoing, if the person then serving as sole Trustee (or any Co-Trustee) is an "adverse party" (as that term is defined in Section 672(a) of the Internal Revenue Code) as to the authority to exercise the power described or referred to in this Paragraph (the "Grantor Trust

Page 3, DAVID MACMILLAN RESIDENCE TRUST

Power"), then the Grantor Trust Power shall be exercisable by the next named successor Trustee (or by one or more then serving Co Trustees) who is neither the Grantor nor an adverse party as to the Grantor Trust Power. If each of the serving Co-Trustees or sole Trustee and each of the named successor Trustees is an adverse party as to the Grantor Trust Power, the Grantor shall name a "Special Trustee for Grantor Trust Power" who is not an adverse party; provided however, that such Special Trustee for Grantor Trust Power shall not be related or subordinate to the Grantor, as that term is defined in Section 672(c) of the Internal Revenue Code. The Grantor shall notify the Trustee of any appointment of a Special Trustee for Grantor Trust Power in a written instrument delivered to the Trustee no less than ten (10) days prior to appointing such Special Trustee for Grantor Trust Power. Further, to the extent the existence or exercise of the power described or referred to in this Paragraph reasonably would be expected to result in the inclusion of any portion of the Trust Estate in the gross estate of the Grantor for federal estate tax purposes, such power shall not be exercisable by the Grantor or Trustee, as applicable, but, instead, shall be exercisable in a nonfiduciary capacity, and without the consent or approval of any person in a fiduciary capacity, by a nonadverse party (as that term is defined under Section 672 of the Internal Revenue Code or any successor to that Section) as the Grantor may designate at any time and from time to time in a written instrument delivered to the Trustee. The Grantor or the Trustee may disclaim all or any portion of the rights and benefits conferred upon the Grantor or Trustee, as applicable, under this Paragraph (or the applicable Paragraph) by notifying the Trustee in a written instrument delivered to the Trustee which shall contain a statement that the Grantor or the Trustee intends the Trust to cease to be a grantor trust for federal income tax purposes, and the nonadverse party then acting, if any, shall be removed. Any disclaimer by the Grantor or the Trustee of the rights and benefits under this Paragraph shall be irrevocable.

ARTICLE 2

## RIGHTS RESERVED TO THE GRANTOR:

    2.1    <u>Trust to Be Irrevocable</u>. The Trust or Trusts created pursuant to this Agreement are irrevocable and, except as provided in Paragraph 1.3 and Paragraph 4.1, may not be altered or amended in any respect by the Grantor. Furthermore, the Trust or Trusts created pursuant to this Trust Agreement may not be terminated except as permitted by this Trust Agreement.

    2.2    <u>Additions of Assets Other Than Cash</u>. Except as provided in Paragraph 4.6, the Grantor shall have the right, at any time during the Initial Term, to add Permitted Property other than cash to the Trust Estate, and the Permitted Property so added to the Trust Estate shall be subject to all the terms of this Trust Agreement. Any other person may, from time to time during the Initial Term, with the consent of the Trustee, add Permitted Property other than cash to the Trust Estate, which shall be subject to all the terms and provisions of this Trust Agreement. Additions of cash to the Trust Estate are discussed in Paragraph 2.3. After the Initial Term, the Grantor shall have the right, at any time or times, to add to the Trust Estate, and the property so added to the Trust Estate, whether real, personal or mixed, shall, after notice to the Trustee, be subject to all the terms of this Trust Agreement. After the Initial Term, any other

Page 4, DAVID MACMILLAN RESIDENCE TRUST

person may, from time to time, with the consent of the Trustee, add property of any kind to the Trust Estate, or any part thereof, which shall be subject to all the terms and provisions of this Trust Agreement.

2.3    Additions of Cash; Excess Cash Amount.

(a)    Cash Additions. During the Initial Term, the Grantor may, at the Grantor's option and with the consent of the Trustee, pay Trust expenses directly, or the Grantor or any other person may add cash to the Trust Estate provided that such addition must be for one or more of the following purposes:

(1)    To pay Trust expenses (including mortgage payments) already incurred or reasonably expected to be paid by the Trustee within six (6) months from the date the addition is made;

(2)    To pay for improvements to the Residence, provided that the Trustee will pay for such improvements within six (6) months from the date the addition is made, and provided that such improvements do not cause the Residence to fail to meet the definition of a personal residence of the Grantor within the meaning of Regulations Section 25.2702-5(c); and

(3)    To purchase a replacement Residence in the event the Trustee sells a Residence owned by the Trust. In order for such an addition to be made, the Trustee must have previously entered into a contract to purchase such replacement Residence within three (3) months from the date the addition is made.

(b)    Computation of Excess Cash Amount. At least quarterly, the Trustee must calculate an amount (the "Excess Cash Amount"), which shall equal the excess of the total cash held as part of the Trust Estate at the date of the calculation over the amount of cash held at that date which meets the requirements set forth in Paragraph 2.3(a) above.

ARTICLE 3

ADMINISTRATION OF QUALIFIED PERSONAL
RESIDENCE TRUST DURING INITIAL TERM:

3.1    Distribution of Trust Estate During the Initial Term as Set Forth in This Article. During the Initial Term, the Trust Estate shall be held, administered and distributed as set forth in this Article.

Page 5, DAVID MacMILLAN RESIDENCE TRUST

3.2    Distributions to Grantor.

(a)    Distributions of Income.  During the Initial Term, the Trustee shall distribute to the Grantor all net income of the Trust in monthly or other convenient installments, but not less frequently than annually.

(b)    Distributions of Excess Cash Amount.  During the Initial Term, the Trustee shall distribute to the Grantor the Excess Cash Amount immediately after the Trustee calculates the Excess Cash Amount.

(c)    No Distributions to Others.  During the Initial Term, the Trustee is hereby prohibited from making any distributions of Trust income or principal to anyone other than the Grantor.

3.3    Rent-Free Use of Residence by Grantor.  During the Initial Term, the Trustee is authorized and directed to allow the Grantor to use, occupy and otherwise enjoy the Residence as the Grantor's residence without the payment of rent.

3.4    Cessation of Use of Residence by Grantor.  During the Initial Term, the Trust shall cease to be a qualified personal residence trust on the earlier of the date (the "Use Cessation Date"):  (a) the Grantor ceases to use the Residence as the Grantor's personal residence within the meaning of Regulations Section 25.2702-5(c); or (b) the Residence ceases to be held for use as a personal residence of the Grantor within the meaning of Regulations Section 25.2702-5(c). Upon the Use Cessation Date, the Trustee shall hold, distribute and administer the Trust Estate in accordance with the provisions of Paragraph 3.7.

3.5    Sale of Residence; Application of Sale Proceeds.

(a)    Sale Cessation Date.  During the Initial Term, if the Trustee sells the Residence, the Trust shall cease to be a qualified personal residence trust at the earliest of the following dates (the "Sale Cessation Date"):

(1)    The date that is two (2) years after the date of the sale of the Residence, if at such date the Trustee has not applied any Sale Proceeds toward the purchase of another Residence;

(2)    The date on which the Trust acquires another Residence, but only to the extent that the Sale Proceeds exceed the purchase price of the new Residence;

(3)    The Termination Date.

(b)    Special Definition of Permitted Property.  Solely for purposes of temporarily reinvesting Sale Proceeds in contemplation of later applying such proceeds toward the purchase of another Residence under this Paragraph, the term "Permitted Property" shall

Page 6, DAVID MacMILLAN RESIDENCE TRUST

Case 2:17-ap-01485-NB   Doc 1   Filed 09/26/17   Entered 09/26/17 14:13:44   Desc
Main Document    Page 39 of 91

include any property in which the Trustee is permitted to invest the Trust Estate under Paragraph 9.3. In addition, for purposes of this Paragraph, the term "Sale Proceeds" shall include the fair market value at the Sale Cessation Date of any assets purchased by the Trustee with the cash proceeds obtained from the sale of the Residence.

(c)   Trustee Action at Sale Cessation Date. Upon the Sale Cessation Date, the Trustee shall hold, distribute and administer the Trust Estate or any portion thereof which no longer qualifies as a qualified personal residence trust in accordance with the provisions of Paragraph 3.7.

3.6   Damage to or Destruction of Residence; Application of Insurance Proceeds. During the Initial Term, if damage or destruction renders the Residence unusable as a Residence within the meaning of Regulations Section 25.2702 5(c), and subject to the remaining provisions of this Paragraph, the Trust shall cease to be a qualified personal residence trust on the earlier of the following dates (the "Damage Cessation Date"): (a) the date that is two (2) years after the Residence ceases to be used as a personal residence; or (b) the Termination Date. Upon the Damage Cessation Date, the Trustee shall hold, distribute and administer the entire Trust Estate in accordance with Paragraph 3.7. Notwithstanding the foregoing, if prior to the Damage Cessation Date, (1) replacement of or repairs to the damaged Residence are completed or (2) a new residence is acquired by the Trust, the Trust shall cease to be a qualified personal residence trust upon the Damage Cessation Date only to the extent that the amount of any Insurance Proceeds received exceeds the amount of Insurance Proceeds actually expended prior to the Damage Cessation Date to (A) repair or replace the damaged Residence or (B) acquire a new Residence. Upon the Damage Cessation Date, the Trustee shall hold, administer and distribute any such excess Insurance Proceeds in accordance with Paragraph 3.7.

3.7   Cessation of All or Part of Trust Estate To Be a Qualified Personal Residence Trust. If, under any provision of this Article, all or part of the Trust ceases to be a qualified personal residence trust during the Initial Term, the Trust Protector, in its sole discretion, within thirty (30) days of the date on which such cessation occurs, must elect to either (a) distribute the assets outright to the Grantor, or (b) hold the non-qualifying portion of the Trust Estate until the Termination Date (as defined in Paragraph 15.17) in a separate qualified annuity trust in accordance with the provisions of Article 4.

3.8   Administration After Termination Date. After the Termination Date, the Trustee shall hold, administer and distribute the portion of the Trust Estate then being administered pursuant to the provisions of this Article in accordance with the provisions of Article 5. However, if the Termination Date is the same date as the Sale Cessation Date or the Damage Cessation Date, the Trustee shall hold, administer and distribute (a) any portion of the Trust Estate which ceases to qualify as a qualified personal residence trust at the Termination Date in accordance with the provisions of Paragraph 3.7 and (b) the remaining portion of the Trust Estate in accordance with the provisions of the first sentence of this Paragraph.

Page 7, DAVID MacMILLAN RESIDENCE TRUST

ARTICLE 4

QUALIFIED ANNUITY TRUST:

4.1     Intent to Create Qualified Annuity Trust.  Where all or a portion of the Trust
Estate ceases to be a qualified personal residence trust under the provisions of Article 3, and
where in accordance with the provisions of Paragraph 3.7, the Trustee holds such non-qualifying
portion in a qualified annuity trust, the Trustee shall hold, administer and distribute such portion
of the Trust Estate in accordance with the provisions of this Article.  The Grantor intends that
any Trust administered under this Article shall constitute a qualified annuity interest under
Regulations Section 25.2702-5(c)(8)(ii).  Any provision of this Trust Agreement inconsistent
with this intention shall be of no effect.  The Trustee shall have the power to amend the terms of
this Trust Agreement at any time and in any manner that may be required in order for this Article
to comply with the requirements of the above-mentioned Regulations Section, and any such
amendment shall apply retroactively to the inception of the Trust.

4.2     Effective Date of Annuity.  The right of the Grantor to receive the Annuity
Amount shall begin at the date (the "Effective Date") on which either (1) the Residence ceases to
be used or held for use as a personal residence of the Grantor, (2) the date on which the Trustee
sells the Residence or (3) the date of damage to or destruction of the Residence, as appropriate.

4.3     Trustee Discretion to Defer Commencement of Annuity Payments.
Notwithstanding the provisions of Paragraph 4.2, the Trustee in its sole and absolute discretion,
may elect to defer payment of any Annuity Amount otherwise payable under Paragraph 4.2 until
the date that is thirty (30) days after the date on which the qualified annuity trust is created
pursuant to the provisions of Paragraph 3.7 (the "Conversion Date").  The Trustee shall reduce
the total amount of payments deferred under this Paragraph by the amount of Trust income, if
any, actually distributed to the Grantor between the Effective Date and the Conversion Date.

4.4     Deferred Payments of Annuity Amount to Bear Interest.  Any payment of an
Annuity Amount which the Trustee elects to defer under Paragraph 4.3 shall bear interest from
the Effective Date at a rate not less than the rate specified pursuant to Internal Revenue Code
Section 7520 as applicable on the Effective Date.

4.5     Determination of Annuity Amount.  The Trustee shall determine the Annuity
Amount in accordance with the provisions of this Paragraph.

(a)     Entire Trust Estate Ceases to be a Qualified Personal Residence Trust.  If
under Article 3, the entire Trust Estate ceases to be a qualified personal residence trust, the
Annuity Amount shall equal an amount determined by dividing:

(1)     the lesser of (A) the value of the interest in the Residence retained
by the Grantor at the date the Grantor originally transferred the Residence to the Trust or (B) the
value of the entire Trust Estate at the Conversion Date by

Page 8, DAVID MacMILLAN RESIDENCE TRUST

(2)   an annuity factor determined for the original term of the Grantor's interest, using the rate determined under Internal Revenue Code Section 7520 (as of the date the Grantor originally transferred the Residence to the Trust), assuming the annuity percentage equals the Internal Revenue Code Section 7520 rate mentioned earlier in this sentence.

(b)   <u>Less than Entire Trust Estate Ceases to be a Qualified Personal Residence Trust</u>. If under Article 3, a portion of the Trust Estate, but not the entire Trust Estate, ceases to be a qualified personal residence trust, the Annuity Amount shall equal the Annuity Amount determined in Paragraph 4.5(a) multiplied by the following fraction:

(1)   <u>Numerator</u>. The numerator of the fraction shall be the excess of (A) the fair market value of the Trust Estate on the Conversion Date over (B) the amount reinvested in the new Residence (including acquisition costs) or the amount expended to repair the original Residence.

(2)   <u>Denominator</u>. The denominator of the fraction shall be the fair market value of the Trust Estate at the Conversion Date.

4.6   <u>Payment of Annuity Amount</u>. With the exception of Annuity Amounts deferred under Paragraph 4.3 (which shall be paid in a lump sum in accordance with the provisions of Paragraph 4.3), the Trustee shall pay the Annuity Amount to the Grantor annually on the last day of each taxable year of the Trust during the remainder of the Initial Term, or at a more frequent interval as determined by the Trustee in its sole discretion on the Conversion Date. The Annuity Amount for a particular taxable year may be paid after the close of such taxable year, provided that the payment is made no later than the date by which the Trustee is required to file the federal income tax return of the Trust for such taxable year (without regard to extensions). The Annuity Amount shall be paid from income of the Trust and, to the extent that income is not sufficient, from principal of the Trust. Any income of the Trust for a taxable year in excess of the Annuity Amount shall be added to the principal of the Trust. No additional contributions shall be allowed to be made to or received by the qualified annuity Trust Estate after the date on which a qualifying annuity trust is created pursuant to the provisions of Paragraph 3.7.

4.7   <u>Valuation</u>. For purposes of determining the Annuity Amount, the fair market value of the Trust assets shall be such value as determined for federal income tax purposes. If the net fair market value of the Trust assets is incorrectly determined, then within a reasonable period after the value is finally determined for federal tax purposes, the Trustee shall pay to the Grantor (in the case of an undervaluation) or receive from the Grantor (in the case of an overvaluation) an amount equal to the difference between the Annuity Amount properly payable and the Annuity Amount actually paid.

4.8   <u>Proration of Annuity Amount</u>.

(a)   <u>Short Taxable Year</u>. The first day of the first taxable year of any portion of the Trust Estate which is to constitute a qualified annuity interest shall be the date on which

Page 9, DAVID MacMILLAN RESIDENCE TRUST

the Residence ceases to be used or held for use as a personal residence of the Grantor, the date on which the Trustee sells the Residence or the date of damage to or destruction of the Residence, as applicable. For any such taxable year which is for a period of less than twelve (12) months, other than the taxable year in which the Initial Term ends, the Annuity Amount shall be the amount specified in Paragraph 4.5(a) or (b), as appropriate, multiplied by a fraction, the numerator, the number of days in such taxable year of the Trust and the denominator of which is 365 (366 if February 29 is a day included in the numerator).

(b) Final Taxable Year of Initial Term. For the taxable year of the Trust in which the Initial Term ends, the Annuity Amount shall be the amount specified in Paragraph 4.5(a) or (b), as appropriate, multiplied by a fraction, the numerator of which is the number of days in the period beginning on the first day of such taxable year ending on the day the Initial Term ends, and the denominator of which is 365 (366 if February 29 is a day included in the numerator).

4.9    Administration of Annuity Trust After Termination Date. After the Termination Date, the Trustee shall hold, administer and distribute the Trust Estate of the qualifying annuity trust in accordance with the provisions of Article 5.

ARTICLE 5

ADMINISTRATION OF TRUST ESTATE
UPON TERMINATION DATE:

5.1    Administration of Trust Estate Upon Termination Date As Set Forth in This Article. Commencing upon the Termination Date, the Trust Estate shall be held, administered and distributed as set forth in this Article.

5.2    Death of Grantor. If the Grantor's death constitutes the Termination Event, the Trust Estate shall be distributed in accordance with the provisions of this Paragraph.

(a)    Cash in Qualified Personal Residence Trust. The Trustee shall distribute to the estate of the Grantor any cash held as part of any portion of the Trust Estate which still qualifies as a qualified personal residence trust at the Termination Date to the extent that such cash exceeds the amount needed to pay Trust expenses due and payable at the Termination Date (including expenses directly related to the termination of the Trust). The Trustee shall make such distribution no later than thirty (30) days after the Termination Date.

(b)    Deferred Annuity Amounts. The Trustee shall distribute to the estate of the Grantor any Annuity Amounts deferred under Paragraph 4.3 in accordance with the provisions of Paragraphs 4.3 and 4.4 for the payment of such amounts.

(c)    Remainder of Trust Estate. Any portion of the Trust Estate remaining after the distributions pursuant to Paragraphs 5.2(a) and (b) shall be distributed to the Trustee of

Page 10, DAVID MacMILLAN RESIDENCE TRUST

THE DAVID MacMILLAN AND CINDY MARTIN FAMILY TRUST, established June 15, 2011, as amended and restated the same date as this Trust Agreement, as it may be further amended as of the date of death of the Grantor (the "Living Trust"). If, for any reason, the disposition in this Paragraph 5.2(c) is not operative or is invalid, or if the Living Trust fails, other than by a written revocation, then the Trustee shall distribute the remaining Trust Estate to the Trustee of the Living Trust, in trust, to be held, administered and distributed in accordance with the provisions of the Living Trust.

5.3    Termination Event Other Than the Death of the Grantor. If an event other than the death of the Grantor constitutes the Termination Event, the Trust Estate shall be distributed in accordance with the provisions of this Paragraph.

(a)    Cash in Qualified Personal Residence Trust. The Trustee shall distribute to the Grantor any cash held as part of any portion of the Trust Estate which still qualifies as a qualified personal residence trust at the Termination Date to the extent that such cash exceeds the amount needed to pay Trust expenses due and payable at the Termination Date (including expenses directly related to the termination of the Trust.) The Trustee shall make such distribution no later than thirty (30) days after the Termination Date.

(b)    Deferred Annuity Amounts. The Trustee shall distribute to the Grantor any Annuity Amounts deferred under Paragraph 4.3 in accordance with the provisions of Paragraphs 4.3 and 4.4 for the payment of such amounts.

(c)    Remainder of Trust Estate. The Trustee shall hold, administer and distribute any portion of the Trust Estate remaining after the distributions pursuant to Paragraphs 5.3(a) and (b) (including both principal and accrued and undistributed income) in accordance with the provisions of Article 6. If at the Termination Date the Trust Estate consists of a residence and further if the Grantor continues to reside in that residence after the expiration of the Initial Term, the Grantor is deemed to have exercised an option to rent the Trust property at a fair market value rent, and is legally obligated to pay rent for such occupancy regardless of whether a lease has been signed.

ARTICLE 6

ADMINISTRATION OF TRUST ESTATE AFTER
TERMINATION DATE IF THE GRANTOR IS LIVING:

6.1    Administration of Trust Estate After Termination Date if the Grantor is Living as Set Forth in This Article. Commencing upon the Termination Date, and if the Grantor is living, the remaining Trust Estate, shall be held, administered and distributed as set forth in this Article.

6.2    No Division. After the Termination Date and so long as the Grantor is living, the Trust Estate shall be held, administered and distributed as a single Trust as hereinafter set forth in this Article.

Page 11, DAVID MacMILLAN RESIDENCE TRUST

41

6.3    Accumulation of Income. Subject to the other provisions contained in this Article, the Trustee shall accumulate all of the net income of the Trust so long as the Grantor is living. Such accumulated income shall be added to the principal of the Trust, to be distributed as hereinafter set forth.

6.4    Discretionary Distributions of Principal for the Support of the Children of the Grantor. The Trustee may distribute to or apply for the benefit of any children of the Grantor, out of the principal of the Trust Estate, those sums as the Trustee, in the Trustee's discretion, considers necessary for their proper support, maintenance, health and education, after taking into consideration, to the extent the Trustee considers advisable, any income or other resources of any such children known to the Trustee and reasonably available for those purposes; provided, however, that no portion of the amount or amounts so appointed may be used to discharge any obligation of a parent to support any of those children. Until the Trust Estate is divided pursuant to the terms hereof, any distribution or application of benefits to or for any of the children of the Grantor under this Paragraph shall be charged against the Trust Estate as a whole rather than against the ultimate distributive share of such child (or such child's lineal ancestors or lineal descendants) to whom or for whose benefit the distribution is made. If the Grantor or the Grantor's Spouse is serving as Trustee hereunder at the time a distribution is to be made pursuant to this Paragraph, then such distribution must be approved by the Trust Protector.

6.5    Distribution of Trust Estate Upon the Death of the Grantor. Upon the Grantor's death, the remaining Trust Estate shall be divided, held, administered and distributed in accordance with the provisions of Article 7.

ARTICLE 7

DISTRIBUTION OF TRUST ESTATE AFTER
TERMINATION DATE UPON THE DEATH OF THE GRANTOR:

7.1    Distribution of Trust Estate After Termination Date Upon the Death of the Grantor as Set Forth in This Article. After the Termination Date and upon the death of the Grantor, the remaining Trust Estate shall be held, administered and distributed as set forth in this Article.

7.2    Division of Trust Estate. The Trustee shall divide the Trust into as many equal shares as there are children of the Grantor then living and children of the Grantor then deceased leaving issue then living. The Trustee shall allocate one (1) equal share to each living child of the Grantor and one (1) equal share to each group composed of the living issue of a deceased child of the Grantor, to be further allocated in subshares among those issue by right of representation. Each share or subshare established pursuant to this Paragraph shall be a separate Trust, to be held, administered and distributed in accordance with the remaining provisions of this Article.

Page 12, DAVID MacMILLAN RESIDENCE TRUST

7.3    <u>Administration of Children's Trusts</u>. The Trustee shall hold, administer and distribute any Trust created hereunder for the benefit of a child of the Grantor in accordance with the provisions of this Paragraph 7.3.

(a)    <u>Distribution of Income</u>. The net income of a Trust created hereunder for the benefit of a child of the Grantor shall be distributed to or applied for the use and benefit of that child in monthly or other convenient installments, but not less frequently than quarter-annually.

(b)    <u>Distribution of Principal</u>. The Trustee may distribute to or apply for the benefit of each child of the Grantor or that child's issue, out of the principal of that child's Trust, those sums as the Trustee, in the Trustee's discretion, considers necessary for the proper support, maintenance, health and education of that child or that child's issue, after taking into consideration, to the extent the Trustee considers advisable, any income or other resources of that child or that child's issue, as appropriate, outside of any Trust created pursuant to this Trust Agreement known to the Trustee and reasonably available for those purposes; provided, however, that no portion of the amount or amounts so distributed may be used to discharge any obligation of a parent of such issue to support any of those issue. Any distribution or application of benefits to or for any issue of a child under this subparagraph shall be charged against the child's Trust, rather than against any potential ultimate distributive share of the issue (or such issue's lineal ancestors) to whom or for whose benefit the distribution is made.

(c)    <u>Testamentary Special Power of Appointment</u>. Upon the death of a child of the Grantor, the Trustee shall distribute the balance of that child's Trust to any individuals or entities, other than such child's estate or creditors of such child or such child's estate, in such proportions, either outright or in trust, and on such terms and conditions as specified by such deceased child in his or her Will, whether or not subject to probate, or other written instrument, specifically referring to and exercising such special power of appointment.

(d)    <u>Distribution Upon the Death of a Child of the Grantor</u>. Upon the death of a child of the Grantor, subject to the exercise of the special power of appointment granted that child pursuant to the terms of this Trust Agreement, the undistributed balance of that child's Trust shall be allocated into separate Trusts among the issue of that deceased child, with allocation to be made among such issue by right of representation. If there is no then-living issue of that deceased child, the deceased child's Trust shall be divided into shares and/or subshares for the then-living issue of that deceased child's nearest ancestor not more remote than the Grantor (provided any such issue is a lineal descendant of the Grantor), with allocation to be made among such issue by right of representation. Any share so established for either (1) the issue of that deceased child, or (2) the issue of that deceased child's nearest ancestor not more remote than the Grantor (provided any such issue is a lineal descendant of the Grantor), shall be held in trust and distributed in accordance with the terms of Paragraph 7.4. However, if any part of that deceased child's Trust would otherwise be held in trust for a Beneficiary for whose benefit a Trust is already then being administered under this Trust Agreement, that part shall instead be added to that Trust and shall thereafter be administered according to its terms.

Page 13, DAVID MacMILLAN RESIDENCE TRUST

7.4    Administration of Trusts for Benefit of Issue of Child of Grantor. The Trustee shall hold, administer and distribute any Trust created hereunder for the benefit of the issue of a child of the Grantor in accordance with the provisions of this Paragraph 7.4.

(a)    Distribution of Income. Subject to the remaining provisions of this Paragraph, the net income of a Trust created hereunder shall be distributed to or applied for the use and benefit of the respective Beneficiary thereof in monthly or other convenient installments, but not less frequently than quarter-annually.

(b)    Income for Beneficiary Under Certain Age. Notwithstanding anything to the contrary herein, if any Beneficiary shall become entitled to income from a Trust created hereunder before that Beneficiary has reached the age of twenty-one (21) years, then the Trustee shall continue to hold the income of the Trust for that Beneficiary in trust, with like powers as to management and investment thereof as herein set out and shall use and apply that income, as the Trustee may deem necessary, directly for the proper and reasonable support, maintenance, health and education of the Beneficiary. Any unexpended part of the net income shall be added to the principal until that Beneficiary reaches the age of twenty-one (21) years, from and after which time that Beneficiary shall be entitled to the net income from that Beneficiary's Trust as hereinbefore set forth. Income not expended for a Beneficiary shall become principal of that Beneficiary's Trust and shall be distributed as hereinafter set forth in this Paragraph.

(c)    Distribution of Principal. The Trustee may distribute to or apply for the benefit of each Beneficiary or that Beneficiary's issue, out of the principal of that Beneficiary's Trust, those sums as the Trustee, in the Trustee's discretion, considers necessary for the proper support, maintenance, health and education of any one or more of that Beneficiary or that Beneficiary's issue, after taking into consideration, to the extent the Trustee considers advisable, any income or other resources of the Beneficiary or that Beneficiary's issue, as appropriate, outside of any Trust created pursuant to this Trust Agreement known to the Trustee and reasonably available for those purposes; provided, however, that no portion of the amount or amounts so distributed may be used to discharge any obligation of a parent of such issue to support any of those issue. Any distribution or application of benefits to or for any issue of a Beneficiary under this subparagraph shall be charged against that Beneficiary's Trust as a whole, rather than against any potential ultimate distributive share of the issue (or such issue's lineal ancestors or lineal descendants) to whom or for whose benefit the distribution is made.

(d)    Distribution Upon the Death of a Beneficiary. Upon the death of a Beneficiary, the undistributed balance of that Beneficiary's Trust shall be allocated into separate Trusts among the issue of that deceased Beneficiary, with allocation to be made among such issue by right of representation. If there is no then-living issue of that deceased Beneficiary, the deceased Beneficiary's Trust shall be divided into shares and/or subshares for the then-living issue of that deceased Beneficiary's nearest ancestor not more remote than the Grantor (provided any such issue is a lineal descendant of the Grantor), with allocation to be made among such issue by right of representation. Any share so established for either (1) the issue of that deceased Beneficiary or (2) the issue of that deceased Beneficiary's nearest ancestor not more remote than

Page 14, DAVID MacMILLAN RESIDENCE TRUST

the Grantor (provided any such issue is a lineal descendant of the Grantor) shall be held in trust and distributed in accordance with this Paragraph. However, if any part of that deceased Beneficiary's Trust would otherwise be held in trust for a Beneficiary for whose benefit a Trust is already then being administered under this Trust Agreement, that part shall instead be added to that Trust and shall thereafter be administered according to its terms.

7.5   Contingent Beneficiaries. If at any time before full distribution of the Trust Estate, no other disposition of the Trust Estate is directed by this Trust Agreement, the Trust Estate, or the portion of it then remaining, shall be distributed, free of trust, to those persons who would then be the heirs of the Grantor, their identities and respective shares to be determined as though the death of the Grantor had occurred at that time, in accordance with the laws of the State of California then in effect relating to the succession of separate property not acquired from a predeceased spouse or ancestor.

## ARTICLE 8

SUCCESSOR TRUSTEE:

8.1   Successor Trustee. If either individual Co-Trustee named in this Trust Agreement shall become unable to serve or otherwise cease to act as Co-Trustee hereunder, then the other individual Co-Trustee shall act as sole Trustee under this Trust Agreement. If both individual Co-Trustees named in this Trust Agreement shall become unable to serve or otherwise cease to act as Trustee hereunder, then TOM MacMILLAN shall act as successor Trustee under this Trust Agreement. If TOM MacMILLAN shall become unable to serve or otherwise cease to act as Trustee hereunder, then MICHAEL POTTER shall act as successor Trustee under this Trust Agreement.

8.2   Trustee of Beneficiaries' Trusts. Following the death of the Grantor and the creation of their individual Trusts, each Beneficiary shall act as sole Trustee of his or her respective Trust in the discretion of the then-acting Trustee, but in no event sooner than attaining the age of thirty-five (35) years.

8.3   Exercise of Powers of Trustee if Co-Trustees Are Serving. In the event that Co-Trustees are serving as Trustee of any Trust created hereunder, the powers set forth in this Trust Agreement shall be exercisable by unanimous action of the Co-Trustees acting jointly and not otherwise. Except as provided elsewhere in this Trust Agreement, such as the provisions of Paragraph 9.19, the signatures of all Co-Trustees shall be required to evidence the exercise of any Trustee power.

8.4   Power of an Individual Trustee to Designate a Successor Trustee. This Paragraph provides for the designation of successor Trustees and/or Co-Trustees by an individual Trustee, as provided below:

Page 15, DAVID MacMILLAN RESIDENCE TRUST

(a)     An individual acting as Trustee or named as a successor Trustee in this Trust Agreement (the "Designating Trustee") shall have the power to designate one or more successor Trustees or Co-Trustees (referred to collectively as "Designated Successors" or individually as a "Designated Successor").  Such Designated Successors shall be entitled to serve as Co-Trustees or successor Trustees subject to the limitations or conditions set forth in the remainder of this Paragraph.

(b)     Designated Successors shall commence to serve and shall serve as Trustee or Co-Trustees hereunder as follows:

(1)     A Designated Successor may be appointed to serve concurrently with the Designating Trustee, with the Designated Successor's term ending when the Designating Trustee ceases to act as Trustee hereunder for any reason.

(2)     A Designated Successor may be appointed to serve concurrently with the Designating Trustee, with the Designated Successor's term as Trustee hereunder continuing after the Designating Trustee ceases to act as Trustee hereunder for any reason, provided that there is no successor Trustee named in this Trust Agreement who commences to act as successor Trustee, in which case the Designated Successor shall cease to act as Co-Trustee hereunder, but may be named to resume acting as successor Trustee hereunder at such time as there is no successor Trustee named in this Trust Agreement who is then qualified or able to serve as Trustee hereunder for any reason.

(3)     Designated Successors may be named to act as successor Trustees hereunder, one or more at a time, in the order indicated by the Designating Trustee at such time as there are no successor Trustees named in this Trust Agreement who are available to act as successor Trustee.

(c)     Each acting individual Trustee and each named successor individual Trustee may exercise the power to name Designated Successors, subject to the following limitations:

(1)     Any designation of Trustees and successor Trustees by the Grantor, as set forth in this Trust Agreement, shall take precedence over the exercise of the power to name Designated Successors by any Designating Trustee.

(2)     If the individual named as or serving as Trustee as well as any one or more individuals named as successor Trustees hereunder act as Designating Trustees and exercise the power to name Designated Successors, the exercise by the first-named successor Trustee shall take precedence over an exercise by the second-named successor Trustee, which shall take precedence over an exercise by the third-named successor Trustee, and so on.

(3)     While Co-Trustees are serving, they shall exercise this power jointly; provided, however, that if one Co-Trustee does not join in the designation and does not

Page 16, DAVID MacMILLAN RESIDENCE TRUST

attempt to make an alternative designation, then the designation by the one Co-Trustee shall be effective.

(4)    A Designated Successor shall have the authority to name additional Designated Successors; provided, however, that any Designated Successor named by a Designated Successor may serve as Trustee hereunder only if no successor Trustees named in this Trust Agreement and no Designated Successors named by an individual named as a successor Trustee in this Trust Agreement are available to serve as Trustee hereunder.

(d)    The purpose of this Paragraph 8.4 is to provide a mechanism whereby one or more individuals may be named to serve as successor Trustee hereunder without a court proceeding. However, no provision of this Paragraph 8.4 shall be interpreted to prevent a Designating Trustee from also naming a Qualified Corporate Trustee as a Designated Successor, subject to the provisions of Paragraph 8.4(h).

(e)    The foregoing power to name Designated Successors shall be exercised by a Designating Trustee by giving written notice of the designation of such Designated Successors to the then-living adult Beneficiaries, the guardians of any minor Beneficiaries and the conservators of any incapacitated Beneficiaries, and as otherwise required by law.

(f)    Any designation pursuant to this Paragraph may be revoked or amended by the Designating Trustee by giving written notice in the same manner as the designation was made as provided above.

(g)    Any Designated Successor who serves as a successor Trustee (or Co-Trustee) hereunder shall have all of the powers conferred upon a named Trustee under this Trust Agreement, shall serve without bond and shall for all other purposes be treated as a named Trustee under this Trust Agreement.

(h)    A Designating Trustee may name a Qualified Corporate Trustee to act as a Designated Successor.

8.5    Right of Trustee to Resign; Appointment of Successor Trustee in the Event of a Vacancy.

(a)    Resignation of Trustee. Any Trustee acting as a Trustee under any Trust created hereunder may resign and be discharged from acting as a Trustee of that Trust by giving written notice of its resignation to any remaining Co-Trustee, to the adult Beneficiaries, to the guardians of any minor Beneficiaries and to the conservators of any incapacitated Beneficiaries. The notice shall be served personally or by certified or registered mail, postage prepaid, return receipt requested, and shall specify the date when the resignation shall take effect. The effective date of the resignation shall be at least thirty (30) days after the service or mailing thereof, unless the person or persons to whom notice of the resignation shall have been given shall otherwise consent.

Page 17, DAVID MacMILLAN RESIDENCE TRUST

(b)     Appointment of Successor Trustee to Fill Vacancy.  In the event a vacancy exists in the office of Trustee (whether as a result of the resignation of the then-acting Trustee or for any other reason), and unless a successor Trustee is designated or otherwise appointed as provided in this Trust Agreement, the adult Beneficiaries, the guardians of any minor Beneficiaries and the conservators of any incapacitated Beneficiaries may, by action of a majority in interest, in a written instrument, designate a successor Trustee or Co-Trustees (either individual Trustees and/or a Corporate Trustee) for the Trusts created hereunder; provided that:

(1)     any designated successor is a Qualified Corporate Trustee; and

(2)     the Beneficiaries shall not be permitted to designate any individual Trustee who is considered to be a related or subordinate party subservient to the wishes of any Beneficiary, within the meaning of Section 672(c) of the Internal Revenue Code or any successor to that Section.

8.6     Declination of a Named Successor Trustee.  Any person or Corporate Trustee named as a successor Trustee under the Trust may decline at any time to act as Trustee of any Trust created hereunder by giving written notice of declination to the acting Trustee.  If there is no acting Trustee at that time, notice shall instead be given to the next named Trustee or, if none is named, then to the adult Beneficiaries, the guardians of any minor Beneficiaries and the conservators of any incapacitated Beneficiaries.  The notice may be served personally, or by certified or registered mail, postage prepaid, return receipt requested.

8.7     Substitution of Qualified Corporate Trustee.  At any time that a Corporate Trustee is serving as Trustee of any Trust created pursuant to the provisions of this Trust Agreement, the adult Beneficiaries, the guardians of any minor Beneficiaries and the conservators of any incapacitated Beneficiaries of such Trusts shall have the power, by action of a majority in interest, to transfer the administration of those Trusts to a new Qualified Corporate Trustee.  The substitution of a new Qualified Corporate Trustee shall be made by the giving of written notice by the adult Beneficiaries, the guardians of any minor Beneficiaries and the conservators of any incapacitated Beneficiaries, directed to the then-acting Corporate Trustee, indicating the desire of the adult Beneficiaries, the guardians of any minor Beneficiaries and the conservators of any incapacitated Beneficiaries to effect a substitution in the office of Corporate Trustee and designating the new Qualified Corporate Trustee selected.  Upon securing the approval of the transfer and substitution by a court of competent jurisdiction to the extent that the approval may be required by law, or within thirty (30) days after receipt of the above-mentioned notice, the Corporate Trustee then serving as Trustee hereunder shall transfer and convey the entire interest of that Corporate Trustee in the Trust Estate to the new and substituted Qualified Corporate Trustee.  The purposes of the foregoing provisions are to insure harmonious relations between the Corporate Trustee and the Beneficiaries, and to further the effective and efficient management of the Trusts created hereunder.  At any time that a Corporate Trustee is named as a Trustee of any Trust created pursuant to the provisions of this Trust Agreement and that Corporate Trustee (a) declines to act as Trustee, (b) otherwise does not commence to act as Trustee or (c) is a named successor Trustee, the adult Beneficiaries, the guardians of any minor

Page 18, DAVID MacMILLAN RESIDENCE TRUST

Beneficiaries and the conservators of any incapacitated Beneficiaries of such Trust shall have the power, by action of a majority in interest, to substitute a new Qualified Corporate Trustee in the place of the named Corporate Trustee. The new Qualified Corporate Trustee shall replace the named Corporate Trustee for all purposes of this Trust Agreement.

8.8   Effect of Succession of Trustees. Any successor of a Trustee hereunder, whether resulting from consolidation, merger, or the transfer of Trust business or from death, resignation, refusal or inability to act, or by any other reason, shall succeed as Trustee with like effect as though originally named as such.

8.9   Powers and Authorities of Successor Trustee. All powers and authorities, including discretionary and administrative powers, herein conferred upon a Trustee shall pass to any subsequent Trustee.

8.10   No Duty of Successor Trustees to Investigate. A succeeding Trustee shall not be under any duty to examine the books and records of its predecessor Trustee and may accept as the full Trust Estate any properties which may be turned over to it.

8.11   Exoneration and Indemnification of Trustee. To the fullest extent permissible under California law, no Trustee serving under this Trust Agreement shall be liable, responsible or accountable in damages or otherwise to the Beneficiaries of the Trust for any acts, or failure or omission to act, performed within the scope of the authority conferred on such Trustee by this Trust Agreement, except for such Trustee's willful misconduct, gross negligence, bad faith or reckless indifference to the interest of the Beneficiaries. To the fullest extent permissible under California law, the Trust shall indemnify and hold harmless the Trustee from and against any and all losses, claims, demands, costs, damages, liabilities, expenses of any nature (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, whether civil, criminal, administrative or investigative, brought against, or threatened against, such Trustee because such Trustee was a Trustee of the Trust, except for such Trustee's willful misconduct, gross negligence, bad faith or reckless indifference to the interest of the Beneficiaries. Such indemnification shall be provided regardless of whether the Trustee continues to be a Trustee at the time any such liability or expense is paid or incurred.

(a)   Expenses incurred by a Trustee in defending any claim, demand, action, suit or proceeding subject to this Paragraph shall from time to time be advanced by the Trust prior to the final disposition of such claim, demand, action, suit or proceeding.

(b)   The indemnification provided by this Paragraph shall be in addition to any other rights to which those indemnified may be entitled under any agreement, vote of the Beneficiaries, as a matter of law or equity or otherwise, and shall inure to the benefit of the heirs, successors, assigns and administrators of the Trustee.

Page 19, DAVID MacMILLAN RESIDENCE TRUST

(c)    The Trustee may purchase and maintain insurance, at the Trust's expense, on behalf of the Trustee, against any liability that may be asserted against, or any expense that may be incurred by, such persons in connection with the activities of the Trust and/or the acts or omissions of such persons, regardless of whether the Trust would have the power to indemnify such persons against such liability under the provisions of this Trust Agreement.

8.12    Trust Protector. TOM MACMILLAN is hereby appointed as Trust Protector hereunder. If TOM MACMILLAN fails or ceases to act as Trust Protector, MICHAEL POTTER shall act as Trust Protector. No Trust created under this Trust Agreement is required to have a Trust Protector acting with respect to that Trust. The Trust Protector shall have the following rights and powers, exercisable during the lifetime of the Grantor.

(a)    The Trust Protector may, with respect to any Trust as to which the Trust Protector is acting, modify or amend:

(1)    The trust administrative provisions relating to the identity, qualifications, succession, removal, and appointment of the Trustee;

(2)    The powers of the Trustee;

(3)    The provisions relating to the Beneficiaries of Trust property, including, but not limited to adding, deleting and changing the percentage interests of the Beneficiaries; provided, however, that added Beneficiaries must be issue of the Grantor;

(4)    The provisions relating to the contingent Beneficiaries of Trust property, including, but not limited to adding, deleting and changing the percentage interests of the contingent Beneficiaries; and

(5)    The terms of any Trust created under this Trust Agreement with respect to (i) the purposes for which the Trustee may distribute Trust income and principal, and the circumstances and factors the Trustee may take into account in making such distributions; (ii) the termination date of the Trust, either by extending or shortening the termination date (but not beyond any applicable perpetuities period); and (iii) the identity of the permissible appointees under the testamentary power of appointment granted to the Beneficiary for whom the Trust is established.

(b)    The Trust Protector acting from time to time, if any, may appoint any one or more individuals (other than the Grantor or a descendant of the Grantor) as successor Trust Protector, unless a successor Trust Protector is named above. Any appointment of a successor Trust Protector hereunder shall be in writing, may be made to become effective at any time or upon any event, and may be single or successive, all as specified in the instrument of appointment. The Trust Protector may revoke any such appointment before it is accepted by the appointee, and may specify in the instrument of appointment whether it may be revoked by a

Page 20, DAVID MACMILLAN RESIDENCE TRUST

subsequent Trust Protector. In the event that two (2) or more instruments of appointment or revocation by the same Trust Protector exist and are inconsistent, the latest by date shall control.

(c)    Any Trust Protector may resign by giving prior written notice to the Trustee. All Trusts created under this Trust Agreement need not have or continue to have the same Trust Protector. The provisions of this Trust Agreement that relate to the Trust Protector shall be separately applicable to each Trust created hereunder.

(d)    Notwithstanding any other provision of this Trust Agreement, the Trust Protector shall not participate in the exercise of a power or discretion conferred under this Trust Agreement for the direct or indirect benefit of the Trust Protector, the Trust Protector's estate, or the creditors of either, or that would cause the Trust Protector to possess a general power of appointment within the meaning of Sections 2041 and 2514 of the Code.

(e)    The Trust Protector acting from time to time, if any, on his or her own behalf and on behalf of all successor Trust Protectors, may at any time irrevocably release, renounce, suspend, cut down, or modify to a lesser extent any or all powers and discretions conferred under this Trust Agreement by a written instrument delivered to the Trustee.

(f)    The Trust Protector shall have no duty to monitor any Trust created hereunder in order to determine whether any of the powers and discretions conferred under this Trust Agreement should be exercised. Further, the Trust Protector shall have no duty to keep informed as to the acts or omissions of others or to take any action to prevent or minimize loss. Any exercise or nonexercise of the powers and discretions granted to the Trust Protector shall be in the sole and absolute discretion of the Trust Protector, and shall be binding and conclusive on all persons. The Trust Protector is not required to exercise any power or discretion granted under this Trust Agreement. Absent bad faith on the part of the Trust Protector, the Trust Protector is exonerated from any and all liability for the acts or omissions of any other fiduciary or any Beneficiary hereunder or arising from any exercise or nonexercise of the powers and discretions conferred under this Trust Agreement.

ARTICLE 9

POWERS OF TRUSTEE:

9.1    Powers of Trustee. To carry out the purposes of any Trust created pursuant to the terms of this Trust Agreement and subject to any limitations stated elsewhere in this Trust Agreement, the Trustee is vested with the powers set forth in this Trust Agreement, including but not limited to those powers contained in this Article in addition to any now or hereafter conferred by law affecting any Trust created hereunder and the Trust Estate. In the event and to the extent that the terms of the prudent investor rule or the Uniform Prudent Investor Act broaden, restrict, conflict or contradict any of the terms of this Trust Agreement, then this Trust Agreement and not the prudent investor rule or the Uniform Prudent Investor Act shall apply.

Page 21, DAVID MacMILLAN RESIDENCE TRUST

Any and all of the powers of the Trustee are subject to the fiduciary obligation of the Trustee to treat all Beneficiaries hereunder equitably.

9.2    Power to Act as Owner. The Trustee is authorized to do all acts, initiate all proceedings and exercise all rights and privileges in the management of the Trust Estate as if the absolute owner thereof. Without limiting the generality of the foregoing, the Trustee shall have the right and power to acquire and collect additions to the Trust Estate, acquire options to purchase additions to the Trust Estate, and to grant, bargain, sell (for cash or on deferred payments), sell short, convey, exchange, convert, lease for terms either within or beyond the duration of the Trust with or without the option to purchase or renew, grant for like terms the right to mine or drill for and remove from Trust properties gas, oil or minerals, encumber, borrow, hypothecate, assign, partition, divide, subdivide, improve, loan, reloan or grant options on any and all property of the Trust Estate. The Trustee is authorized to borrow money for any Trust purpose for the debts of the Trust or the joint debts of the Trust and a Beneficiary, upon terms and conditions as the Trustee may deem to be proper and to obligate the Trust Estate for repayment; and the Trustee may encumber the Trust Estate or any of its property (for the obligations of the Trust or any Beneficiary) by mortgage, deed of trust, pledge, guarantee or otherwise, using such procedure or procedures to consummate the transaction or transactions as the Trustee may deem advisable. The Trustee is authorized to guarantee any loans made to the Grantor and any other obligations (including obligations of unrelated third parties and obligations of business entities in which the Grantor may have an interest), and to encumber any and all of the Trust Estate or any of its property by mortgage, deed of trust, pledge or otherwise, using such procedure or procedures to consummate the transaction or transactions as the Trustee may deem advisable. Except as otherwise specifically provided in this Trust Agreement, all transactions shall be for fair and adequate consideration. ·

9.3    Investment Powers. In accordance with the provisions of this Trust Agreement and, specifically, the provisions for diversification set forth in the Paragraph titled "Power to Retain or Abandon Property; Diversification," the Trustee is authorized to invest and reinvest the principal, and the income if the Trustee is permitted to accumulate it. In so doing, the Trustee shall act with the care, skill, prudence and diligence under the circumstances then prevailing, specifically including, but not by way of limitation, the following:

     (a)    General economic conditions.

     (b)    The possible effect of inflation or deflation.

     (c)    The expected tax consequences of investment decisions or strategies.

     (d)    The role that each investment or course of action plays within the overall Trust portfolio.

     (e)    The expected total return from income and the appreciation of capital.

Page 22, DAVID MacMILLAN RESIDENCE TRUST

(f)    Other resources of the Beneficiaries known to the Trustee as determined from information provided by the Beneficiaries.

(g)    Needs for liquidity, regularity of income, and preservation or appreciation of capital.

(h)    An asset's special relationship or special value, if any, to the purposes of the Trust or to one or more of the Beneficiaries.

(i)    The anticipated needs of the Trust and its Beneficiaries.

The Trustee shall consider individual investments as part of an overall investment strategy having risk and return objectives reasonably suited to the purposes of the Trust. In so doing, the Trustee shall act as a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, to attain the goals of the Grantor as determined from the Trust Agreement. Within the limitations of the foregoing standard and considering individual investments as part of an overall investment strategy, the Trustee is authorized to acquire every kind of property, real, personal or mixed, and every kind of investment, whether domestic or foreign, specifically including, but not by way of limitation, corporate and government obligations of every kind, preferred or common stocks (on margin or otherwise), currencies, interests in limited liability companies, commodities (on margin or otherwise), options (whether covered or not) or futures for stocks, stock index options, commodities or other assets, any other derivative securities, shares of investment trusts, shares of investment companies, shares of mutual funds (including mutual funds of which the then-acting Trustee or an affiliate of the then-acting Trustee serves as investment adviser), mortgage participations, partnership interests (general or limited) and common trust funds (including common trust funds administered by the then-acting Trustee or an affiliate of the then-acting Trustee). Further, subject to the standards and limitations stated in this Trust Agreement, the Trustee is specifically authorized to (but is not required to) invest funds or assets belonging to the Trust Estate (a) in the purchase or construction of a home for a Beneficiary and/or (b) in the commencement or conduct of a trade or business by a Beneficiary. Notwithstanding the foregoing, the Trustee is authorized to invest the entire Trust Estate in interest-bearing accounts, certificates of deposit, market funds, index funds or any other non-equity income-producing investment, despite the possible decrease of purchasing power of the value of the principal of the Trust Estate.

9.4    Special Provisions While Corporate Trustee Is Acting. The Grantor acknowledges that, notwithstanding any provision in this Trust Agreement to the contrary, so long as any Corporate Trustee is serving as Trustee under this Trust Agreement, the provisions listed below shall apply. To the extent that said provisions differ or are inconsistent with any provisions of this Trust Agreement, the terms of this Paragraph 9.4 shall control.

(a)    Any Corporate Trustee may, in its discretion, invest and reinvest in equity securities, securities of any registered investment company (mutual fund), units of common trust

Page 23, DAVID MacMILLAN RESIDENCE TRUST

funds, interests in unregistered private placement investment funds or undivided interests in any other kind of commingled investment vehicle or strategy of which the Corporate Trustee or a parent or one or more affiliated companies is acting as Trustee, investment advisor or is providing services for compensation.

(b)    Any Corporate Trustee may, in its discretion, engage any one or more of its affiliates, including but not limited to an affiliate that may be a registered investment advisor under the Investment Advisors Act of 1940 or a national bank or trust company or a state bank or trust company with respect to any portion of the Trust Estate, and in such event the affiliate shall have the investment powers granted to the Corporate Trustee hereunder. If the Corporate Trustee engages an affiliate, each shall be entitled to the compensation to which it would be entitled in the absence of the affiliation.

(c)    Any Corporate Trustee may exercise the powers granted under this Paragraph, even though such action may create a conflict of interest and/or may involve an investment that is not of a type or marketability traditionally considered for trust investments. The Grantor hereby waives any conflict of interest that may result directly or indirectly from purchasing, selling or holding any such affiliated investment on behalf of this Trust and from engaging the services of any affiliate and directs that with respect to party in interest transactions such as those outlined in this Paragraph, the Corporate Trustee shall be judged by the same standards and rules of law that would apply to transactions among strangers free of any element of divided loyalty or conflicting interests, notwithstanding the Corporate Trustee's customary duty to avoid conflicts of interest.

9.5    Power to Retain or Abandon Property; Diversification. The Trustee is authorized to continue to hold any and all property, regardless of lack of diversification, including all assets received by the Trustee (from any and all sources) and to operate at the risk of the Trust Estate any property or business received as long as the Trustee may deem it advisable, regardless of lack of diversification, the profits and losses thereon to inure to or be chargeable against the Trust Estate and not to the Trustee. The Grantor specifically waives any obligation of the Trustee to diversify the Trust assets by holding such interest or interests, and the Trustee shall be indemnified under this Trust Agreement in connection therewith. Except to the extent prohibited by law, no statutory provision shall constitute a limitation upon the exercise by the Trustee of discretion in continuing to hold securities, properties, partnership interests (general and limited), interests in limited liability companies, business interests or investments received hereunder. Notwithstanding the foregoing, no provision contained herein should be construed to give the Trustee the power to retain any property beyond the date such property is to be distributed to any Beneficiary hereunder. The Trustee may, in the Trustee's discretion, abandon any property or interest in property belonging to any Trust if the Trustee determines, in the Trustee's discretion, that the abandonment is in the best interests of the Trust and its Beneficiaries.

Page 24, DAVID MacMILLAN RESIDENCE TRUST

9.6    Certain Management Powers.

(a)    Compromise. The Trustee may, at the option of the Trustee, at any time, in connection with the management of the Trust Estate or the collection of any monies due or payable to a Trust created hereunder, compromise any claims existing in favor of or against the Trust.

(b)    Trustee Loans. The Trustee may loan or advance the Trustee's own funds for any Trust purpose to the Trust without security or upon the security of all or any portion of the principal of the Trust involved. Those loans shall bear interest at the then-current rate from date of advancement until repaid. However, the Trustee shall in no event be required to make any loan or advancement to the Trust.

(c)    Nominees. Any certificate, security or any evidence of indebtedness or ownership of property may be registered or taken and held in the name of the Trustee, or in the name of the nominee or nominees of the Trustee, with or without the disclosure of fiduciary relations, in order to more readily facilitate the handling of the Trust Estate.

9.7    Reimbursement of Trustee. The Trustee is authorized to reimburse itself from principal or income for any expense incurred by reason of the Trustee's fiduciary ownership or holding of any property in the Trust Estate.

9.8    Power to Employ. The Trustee may employ attorneys, accountants, brokers, agents, managers, appraisers, investment advisers, custodians, corporate fiduciaries and others whose services are in the Trustee's discretion reasonably necessary or convenient to the administration of the Trust or for the carrying out of any of the Trustee's powers or discretions hereunder. The Trustee shall not be liable to the Trust or to any Beneficiaries as a result of any losses, costs or damages of any kind, type or nature, suffered or incurred by the Trust or by any Beneficiary resulting from the Trustee's reasonable good faith reliance on professional advice rendered by any professional advisers engaged by the Trustee on behalf of the Trust. The Trustee is authorized to employ the Trustee or any firm with which the Trustee is associated to perform any services that are in the Trustee's discretion necessary or convenient to the administration of the Trust created hereunder. Reasonable compensation for all services performed by these agents shall be paid from the Trust Estate, and shall not decrease the compensation to which the Trustee is entitled.

9.9    Installment Payments of Income. Except as otherwise indicated herein, the Trustee shall make the payments of the annual net income of any Trust required to be distributed hereunder at least quarter-annually or more often in the discretion of the Trustee. The Trustee shall have the power to budget the estimated annual income and expenses of the Trust in such manner as to equalize, as far as possible, periodic income payments to the Beneficiaries. In computing the amount of any such installment, the Trustee may, to the extent deemed appropriate by the Trustee, make reservation for expenses to be charged against such net income.

Page 25, DAVID MacMILLAN RESIDENCE TRUST

9.10    Segregation, Allocation and Distribution of Assets.  With the exception of the requirement that the portion of the Trust Estate held as a qualifying annuity trust be held separately from the portion of the Trust Estate held as a qualified personal residence trust, and except as provided in Paragraph 1.7, there need be no physical segregation or division of the various Trusts, except as segregation or division may be required by the termination of any Trusts.  Regardless of any segregation or division of the various Trusts, the Trustee shall keep separate accounts for the different undivided interests.  Upon any division of the Trust Estate into separate shares or Trusts, and upon any distribution of the income or principal, the Trustee may apportion and allocate the assets of the Trust Estate in cash or in kind, or partly in cash and partly in kind, or in undivided interests in such manner and at such values as the Trustee in its discretion deems advisable.  Any distribution or division in kind may be made on a proportionate or a disproportionate basis so long as the respective assets allocated or distributed have equivalent or proportionate fair market value.  In making in kind allocations of assets, the Trustee shall take into consideration the income tax basis of specific property to be so allocated in determining equivalence of value, to the extent that the Trustee deems it advisable and/or to the extent any other adjustments are determined by the Trustee to be reasonable.  The Trustee may sell such property as it deems necessary to make any division or distribution.  After any division of the Trust Estate, the Trustee may make joint investments with funds from some or all of the several shares or Trusts.

9.11    Trust Distributions.  Upon any distribution of a Trust, in whole or in part, the Trustee may assign, transfer or deliver in kind to the Beneficiary then entitled thereto, any part of the Trust Estate or an undivided interest in the Trust Estate, or any portion thereof, at the value as the Trustee may establish as the then fair market value.  No interest shall be paid on any specific distribution of cash or property (if any) set forth in this Trust.  Notwithstanding any provision of this Trust Agreement to the contrary, if the Trust Estate includes one or more promissory notes with respect to which gain would be accelerated under Section 453B of the Internal Revenue Code if distributed to a Beneficiary, the Trustee, in its sole discretion, may elect not to distribute such note(s) at the time provided in this Trust Agreement.  In the event the Trustee so elects, such note(s) shall continue to be held in trust and the payments received by the Trustee under the note(s) shall be divided, held, administered and distributed as otherwise set forth in this Trust Agreement, until the Trustee determines to distribute the note(s) or until the note(s) are paid in full.  Further, the Trustee may, for any reason, elect not to distribute all or any portion of the principal of the Trust Estate with the consent of the Beneficiary who or which is entitled to receive such distribution, until such time as that Beneficiary desires to receive distribution of such principal.

9.12    Power to Add Charitable Organization as Beneficiary.  After the Initial Term, the Trustee shall have the power, at any time or from time to time, to add as a Beneficiary of this Trust Agreement as to any portion of the Trust Estate up to the whole thereof, any one (1) or more charitable organizations, provided that the contributions to such charitable organization are deductible under Sections 170(c), 642(c) and 2522(a) of the Internal Revenue Code.  The Trustee (or such other person who is authorized to exercise this power pursuant to the limitations set forth in Paragraph 1.10) shall exercise such power by providing written notice to any Trustee or

Page 26, DAVID MacMILLAN RESIDENCE TRUST

Co-Trustee then serving (if the power is being exercised by someone other than the Trustee), the then-living adult Beneficiaries, the guardians of any minor Beneficiaries, the conservators of any incapacitated Beneficiaries, and as otherwise required by law.

9.13    Principal and Income. Except when the Trust Agreement specifically provides otherwise, the Trustee shall determine principal and income of the Trust Estate and from time to time apportion and allocate receipts, expenses, and other charges between those accounts according to the provisions of the California Uniform Principal and Income Act ("UPAIA"). With respect to matters not provided for in the UPAIA, the Trustee shall have the absolute discretion to determine what is principal or income, and apportion and allocate any and all receipts and disbursements between those accounts, subject only to fiduciary standards and limitations of law. The exercise of that discretion within the above set forth limitations shall be conclusive on all persons interested in the Trust Estate.

9.14    Acceptance of Gifts. Except as otherwise specifically provided herein, the Trustee is authorized to accept gifts from any individual who desires to contribute to the principal of any of the respective Trusts created hereunder. The acceptance of any such additional gifts shall be in the sole and absolute discretion of the Trustee. However, the Trustee may not accept gifts to any qualified annuity trust created under the Trust Agreement.

9.15    Powers Over Securities. With respect to securities, interests in limited liability companies, partnership interests and similar property held in the Trust, the Trustee shall have all the rights, powers and privileges of an owner, including, but not by way of limitation:

(a)    to vote, give proxies and pay assessments;

(b)    to participate in voting trusts and similar agreements, pooling agreements, foreclosures, reorganizations, consolidations, mergers, liquidations, sales and leases, and incident to such participation to deposit securities with and transfer title to any protective or other committee on such terms as the Trustee may deem advisable;

(c)    to participate in and to exercise rights under buy-sell, close corporation and S corporation shareholder agreements, or similar agreements;

(d)    to exercise or sell stock subscription or conversion rights;

(e)    to consent to foreclosures, reorganizations, consolidations, mergers and liquidations; and

(f)    to deposit securities with and transfer title to any protective or other committee on any terms that the Trustee, in the Trustee's discretion, considers advisable.

The signature of the Trustee, or one of two or more acting Co-Trustees, if applicable, shall be sufficient to bind the Trust with respect to any of the foregoing actions taken pursuant to this

Page 27, DAVID MacMILLAN RESIDENCE TRUST

Paragraph and any third party may rely upon the signature of one of two or more acting Co-Trustees in connection therewith. Notwithstanding the foregoing, it is the intention of the Grantor that Co-Trustees shall exercise their powers over securities as a single record holder and under no circumstances shall the vote of the Co-Trustees be split, regardless of whether a specific provision of any rule or law applicable to such securities (including the Corporations Code of the state in which the entity was formed) would permit joint holders of such securities to cast votes other than as a single vote. The signatures of all Co-Trustees shall be required to enter into partnership agreements, limited liability company operating agreements, buy/sell agreements or similar agreements.

9.16   Transactions With Other Entities. Except as prohibited by Paragraph 1.9, the Trustee is authorized to purchase assets from or sell assets to the probate estate of the Grantor or any other person, firm, trust or other entity. Any such purchase or sale shall be at the fair market value of those assets (as determined by the Trustee in the Trustee's discretion) and upon such terms and conditions (with or without security) and in such amounts as the Trustee may deem advisable. The Trustee is authorized to loan funds or assets belonging to the Trust Estate to the Grantor or the Grantor's Spouse, to the probate estate of the Grantor or the Grantor's Spouse, to any Beneficiary hereunder, or to any other person, firm, trust or other entity, upon such terms and in such amounts as the Trustee may deem advisable. Any such loan, if made to anyone other than the Grantor or the Grantor's Spouse, (a) must bear a reasonable rate of interest, but not more than the maximum interest rate allowed under California law, and (b) may be secured, at the Trustee's discretion. The Grantor intends this Trust to be a "grantor trust" as that term is defined in Sections 671 - 677 of the Internal Revenue Code until such time as the Grantor disclaims the right to borrow from the Trust Estate without adequate security as provided in this Paragraph. The Trustee may lend any or all of the Trust income and/or principal to the Grantor without adequate security; provided, however, that any such loan to the Grantor shall bear a reasonable rate of interest (determined without regard to whether the loan is secured); and provided further, that if the person then serving as sole Trustee (or any Co-Trustee) is an "adverse party" as to the authority to lend to the Grantor without adequate security under this Paragraph, as that term is defined in Section 672(a) of the Internal Revenue Code (the "Grantor Borrowing Authority"), then the Grantor Borrowing Authority shall be exercisable by the next named successor Trustee (or by one or more then serving Co-Trustees) who is neither the Grantor nor an adverse party as to the Grantor Borrowing Authority. If each of the serving Co-Trustees or sole Trustee and each of the named successor Trustees is an adverse party as to the Grantor Borrowing Authority, the Grantor shall name a "Special Trustee for Lending" who is not an adverse party; provided however, that such Special Trustee for Lending shall not be related or subordinate to the Grantor, as that term is defined in Section 672(c) of the Internal Revenue Code. The Grantor shall notify the Trustee of any appointment of a Special Trustee for Lending in a written instrument delivered to the Trustee no less than ten (10) days prior to appointing such Special Trustee for Lending. The Grantor may disclaim the right to borrow from the Trust without adequate security by notifying the Trustee in a written instrument delivered to the Trustee. Any disclaimer by the Grantor of the right to borrow from the Trust without adequate security shall be irrevocable. Notwithstanding any provision of this Paragraph to the contrary, in no event shall the Trustee make any investment (other than a loan to the Grantor without adequate

Page 28, DAVID MacMILLAN RESIDENCE TRUST

security) pursuant to the provisions of this Paragraph for less than adequate consideration in money or money's worth or that the Trustee determines would not be a prudent investment of the assets of the Trust Estate. Further, subject to the standards and limitations stated in this Trust Agreement, the Trustee is specifically authorized to (but is not required to) loan funds or assets belonging to the Trust Estate for (1) the purchase or construction of a home for a Beneficiary and/or (2) the commencement or conduct of a trade or business by a Beneficiary.

9.17    Power to Purchase Insurance. The Trustee is authorized to procure and carry, at the expense of the Trust, insurance of such kind and in such form and amount as the Trustee deems advisable to protect the Trustee, the Trusts and the Trust Estate against any hazard, risk of loss or other potential liability; however, during the Initial Term, such insurance must constitute an Insurance Policy under Paragraph 1.6(d).

9.18    Payments to or for Minors or Incapacitated Persons. If at any time or from time to time any Beneficiary entitled to receive income or principal hereunder shall be a minor or an incapacitated adult, the Trustee may make the distribution or expenditure for the Beneficiary, in the sole discretion of the Trustee, in any one or more of the following ways:

(a)    directly to the Beneficiary;

(b)    to the guardian, conservator or other fiduciary of the person or estate of the Beneficiary;

(c)    to a Uniform Transfers to Minors Act account, already existing or created for a minor, in any jurisdiction;

(d)    to any person or organization furnishing care, support, maintenance or education of the Beneficiary; or

(e)    by itself making expenditures directly for the support, maintenance, health or education of the Beneficiary.

The Trustee shall not be required to see to the application of any funds so paid or applied and the receipt by such payee shall be full acquittance of the Trustee. The decision of the Trustee as to direct payments or application of funds shall be conclusive and binding upon all parties in interest.

9.19    Banks and Brokerage Accounts and Endorsements. The Trustee is authorized to maintain existing accounts and safe deposit boxes, and open new accounts and safe deposit boxes, at banks, savings and loan associations, brokerage houses and other financial institutions (including with the Trustee and affiliates of the Trustee) for the Trust Estate in such manner that funds may be withdrawn or investment direction given with respect to those accounts, or those safe deposit boxes may be accessed, upon the signature of and upon the instruction of the Trustee, or one of two or more acting Co-Trustees, if applicable. Therefore, one of two or more

Page 29, DAVID MacMILLAN RESIDENCE TRUST

acting Co-Trustees, acting alone, shall have signature power with respect to any account maintained at a savings and loan institution, bank or other financial institution, safe deposit box or brokerage account which then constitutes an asset of the Trust Estate. The signature of the Trustee, or one of two or more acting Co-Trustees, if applicable, shall be sufficient to endorse any check, payment or other instrument which may be received for the account of the Trust, and such endorsement shall be a sufficient receipt to the person giving that check, payment or other instrument to the Trust. The Trustee is authorized, in its discretion, to appoint additional signatories to any accounts and safe deposit boxes maintained or opened at banks, savings and loan associations, brokerage houses and other financial institutions (including with the Trustee and affiliates of the Trustee) for the Trust Estate in such manner that funds may be withdrawn with respect to such accounts upon the signature of such additional signatory or signatories. The signature of such additional signatory or signatories shall be sufficient to endorse any check, payment or other instrument which may be received for the account of the Trust, and such endorsement shall be a sufficient receipt to the person giving the check, payment or other instrument to the Trust.

    9.20    <u>Option to Terminate Shares or Trusts</u>. At any time after the later to occur of the Termination Date and the date of the death of the second to die of the Grantor and the Grantor's Spouse (if any), in the event that:

        (a)    the share or separate Trust held for any Beneficiary of a Trust created hereunder has, at any time, in the opinion of the Trustee, a fair market value of Fifty Thousand Dollars ($50,000) or less,

        (b)    the aggregate fair market value, in the opinion of the Trustee, of all Trusts created hereunder and administered by the Trustee at any time is Two Hundred Fifty Thousand Dollars ($250,000) or less, or

        (c)    the principal value of any Trust created hereunder at any time is less than an amount that can be economically administered in trust,

the Trustee may, in its discretion, but is not required to, terminate that Trust or those Trusts and, regardless of the age of the Beneficiary, distribute the principal and any accrued or undistributed net income thereon to the Beneficiary, or to its guardian, conservator, custodian under the California Uniform Transfers to Minors Act or other similar statute, or other fiduciary.

    9.21    <u>Power to Combine and Divide Trusts</u>. Except as otherwise provided to the contrary in this Trust Agreement, including without limitation the prohibition against combining any qualified personal residence trust with any qualified annuity trust, the Trustee may, at any time and from time to time, and without court approval, for tax and/or administrative reasons:

        (a)    combine any Trust created under this Trust Agreement for any Beneficiary with any other Trust otherwise created for that Beneficiary, whether created under this Trust Agreement or otherwise, the terms of which Trusts are substantially identical and the Trustees of

Page 30, DAVID MacMILLAN RESIDENCE TRUST

which Trusts are identical, provided that the Trustee, in the Trustee's reasonable discretion, determines that administration as a single Trust will be consistent with the intent of the persons who established the Trusts and will facilitate Trust administration without defeating or impairing beneficial interests of current or future Beneficiaries of this Trust; and

      (b)    divide any Trust created hereunder into two or more separate Trusts, each of which shall have the same provisions as the original Trust from which it was established, and references in this Trust Agreement to the original Trust shall refer to the separate Trusts derived from it.

If a Trust is divided into separate Trusts, the Trustee may, at any time prior to a combination of such Trusts, take any and all actions consistent with such Trusts being separate entities including, without limitation, make different tax elections with respect to each separate Trust, expend principal and exercise any other discretionary powers differently with respect to each separate Trust. The donee or other holder of any power of appointment with respect to a Trust so divided may exercise such power differently with respect to the separate Trusts created. In addition, if property is directed to be added to any Trust created hereunder, the Trustee may:

      (1)    hold such additional property as one or more separate Trusts having terms identical to the terms of the Trust to which it was to be added; and

      (2)    allocate such additional property on a non-pro rata basis among the several Trusts, if any, into which the Trust to which such additional property is required to be added was previously divided (including an allocation of all such additional property to one of such Trusts).

No Trustee shall be liable for any good faith exercise of a power described in or otherwise authorized by this Paragraph and, in the event any such good faith exercise of such a power results in a detriment to one or more Beneficiaries, the Trustee shall be exonerated and otherwise held harmless with respect to any such detriment.

    9.22    <u>Power to Withhold Distribution</u>. The Trustee is authorized to withhold from distribution, at the time for distribution of any property of the Trust Estate, without the payment of interest, except for any interest on any pecuniary gift if a failure to pay interest thereon or with respect thereto would adversely affect the use of the exemption from the GST tax of the Grantor, all or any part of the property, as long as the Trustee shall determine in its discretion that the property may be subject to conflicting claims, tax deficiencies or liabilities, contingent or otherwise.

    9.23    <u>Tax Elections</u>. The Trustee shall have the power in the Trustee's absolute discretion to take any action and to make any election to minimize the tax liabilities of this Trust and/or one or more of its Beneficiaries, regardless of the resulting effect on the Trust, the other Beneficiaries or any other person interested in this Trust, to allocate the benefits among the various Beneficiaries, and to make adjustments in the rights of any Beneficiaries or between the

Page 31, DAVID MacMILLAN RESIDENCE TRUST

income and principal accounts, to compensate for the consequences of any tax election or any investment or administrative decision that the Trustee believes has had the effect of directly or indirectly preferring one Beneficiary or group of Beneficiaries over others.  In allocating assets hereunder, the Trustee may take into consideration the basis of such assets to the extent appropriate, as determined by the Trustee in its sole and absolute discretion.

9.24    Subdivision of Real Property.  Subject to the definition of a personal residence of a grantor in the Regulations and subject to the requirement that the Trustee hold solely Permitted Property during the Initial Term, the Trustee is authorized and empowered:

(a)    to subdivide and resubdivide Trust real property and sign applications, maps and other documents incidental thereto;

(b)    to dedicate Trust real property for public purposes, with or without consideration;

(c)    to grant and impose upon Trust real property conditions, covenants, easements, restrictions, rights of way and other servitudes;

(d)    to borrow against Trust real property; and

(e)    to do such other acts as may appear to the Trustee advisable in connection with the exercise of any of the foregoing powers.

9.25    Purchase at Foreclosure.  The Trustee is authorized and empowered, as to any property (real, personal or mixed) in which the Trust has any interest, that is sold at foreclosure, judicial or non-judicial, to make bids upon or purchase the same or, as to such property, to accept a deed in lieu of foreclosure as full or complete satisfaction of the debt which is secured. The Trustee shall allocate income and expense attributable to such property or the proceeds of its sale as if such property were being initially acquired as a Trust investment.

9.26    Fiduciary Related Party Transactions.  The Trustee is authorized to act on behalf of the Trust notwithstanding the self interest of the Trustee, subject to the fiduciary duty of the Trustee, including the power to lease, mortgage or sell any property to or lease or purchase any property from the Trustee; to determine the amount of and to receive compensation for services as Trustee or in any other capacity; in the case of a corporate Trustee, to borrow from, deposit money or otherwise deal with its own banking department or that of an affiliate, to invest in its own stock or stock of any of its affiliates, or to invest in its own common trust fund; and to be interested in any investment, corporation, limited liability company, partnership, other unincorporated business, farming or mining operation, real estate operation or other venture in which the Trust is interested.  No person shall be precluded from acting as Trustee hereunder or being compensated therefor by reason of his or her employment in any capacity by any corporation, limited liability company or partnership or office in any capacity with any corporation, limited liability company or partnership, the stock of which corporation or an

Page 32, DAVID MacMILLAN RESIDENCE TRUST

interest in which limited liability company or partnership constitutes a part or all of the assets of the Trust, nor shall the Trustee be so precluded from accepting such employment or appointment by any such corporation, limited liability company or partnership. The Trustee is specifically authorized and empowered to exercise all of the duties and powers entrusted to such Trustee under the terms of this Trust Agreement despite any duality of fiduciary obligations arising by reason of such person's service as the Trustee and as an officer, director, partner or employee of any corporation, limited liability company or partnership in which the Trust may be interested. No Trustee hereunder shall be liable for any loss or diminution in the Trust resulting from any action such Trustee may take or refrain from taking concerning the foregoing, except for such Trustee's own gross negligence or willful misconduct with regard thereto.

9.27    Power to Commence, Retain and Manage Closely Held Business. The Trustee is expressly authorized to commence or retain, regardless of lack of diversification, as an investment of any Trust created hereunder, securities of or any other ownership interest in any closely held business, whether a sole proprietorship, corporation, limited liability company, joint venture or partnership (including stocks, bonds, debentures and any other form of securities representing either or both a proprietary interest in or obligation of said corporation or other entity), and any other business entity which is a successor to, subsidiary of, or affiliated with, said corporation or other entity, which is now or hereafter assigned, devised, bequeathed, transferred or delivered to the Trustee (all of which, if more than one, are hereinafter referred to as "the Company"). Pending sale or final distribution of said securities or ownership interest or liquidation of the Company, the Trustee shall have the following authorities and discretions, in addition to any other grant of authority and discretion given elsewhere in this Trust Agreement:

(a)    to participate in the management of the Company;

(b)    to supervise, in any manner, the conduct of the Company's business;

(c)    to extend credit to the Company from any Trustee, including the banking department of a corporate Trustee, if one is acting, without in any way increasing, limiting or otherwise affecting its duties, responsibilities and liabilities as Trustee;

(d)    to increase the investment of any Trust in the Company, either or both by way of secured or unsecured loans to the Company, by the purchase of equity from other equity holders of the Company, expressly including equity owned by a Beneficiary, or by subscription to additional equity, either or both common or preferred stock, partnership interests and/or limited liability company membership interests, or by pledging assets for the debts of the Company, whether incurred before or after the death of the Grantor;

(e)    to organize a corporation, partnership or limited liability company under the laws of any state and to transfer to it all or any part of the Company or other property held in the Trust; and

Page 33, DAVID MacMILLAN RESIDENCE TRUST

(f)    to retain in the Company such amount of its net earnings as the Trustee may deem advisable in conformity with responsible business practice.

The Trustee may exercise such authority to such extent and in such manner as the Trustee, from time to time, deems necessary or advisable to protect the investment of any Trust herein and to contribute to the best interest and welfare of the Beneficiaries thereof.

The Grantor expects the Trustee to exercise ordinary business judgment in determining how long such securities or ownership interest shall be retained as an investment and in deciding upon such action as may be taken in its supervision of the management of the Company during the period of such retention and the readjustment of the total investment therein, it being the intention of the Grantor to give to the Trustee every power and discretion it may need or require to provide proper management and supervision of the Company until such time as the Trustee, in its sole judgment, shall deem it to be to the best advantage of a Trust, and the Beneficiaries thereof, to sell or otherwise dispose of such securities or ownership interest; and the Trustee shall not be liable for any loss that may result from the honest exercise of any such power or discretion granted in the Trust Agreement, and shall be indemnified against any such loss from the assets of any Trust holding securities of or any other ownership interest in the Company. The Grantor realizes that the Grantor is exposing any Trust to the risks inherent in all business operations, but it is the belief of the Grantor that the possibility of preserving the capital and income values which the Grantor believes the securities to contain justifies such risk. To the extent that the Trustee may render service to the Company, the Trustee is expressly authorized to take such steps as may be practicable to charge its fees for such service to the Company rather than to a Trust.

Nothing contained herein shall be construed to prevent any individual Trustee from being employed by the Company at a salary commensurate with the value of his or her service, or to prevent him or her from becoming a purchaser of any of such securities or other ownership interest either from the Trustee or from any other source.

The foregoing powers shall be deemed to be and shall be exercised as fiduciary powers. They shall not disqualify the possessor from holding office in the Company, accepting remuneration from it, voting any stock in favor of himself or herself as director or officer, or purchasing or selling stock of the Company.

9.28    Power Regarding S Corporations.  The Trustee shall have the power to make any elections or decisions the Trustee deems appropriate with respect to any stock in an S corporation (as defined in Section 1361(a) of the Internal Revenue Code) held or acquired by the Trust.

9.29    Power Regarding Names of Trusts.  The Trustee shall have the power, in the Trustee's sole and absolute discretion, to name, rename or change the name of the Trust or any Trust created hereunder.

Page 34, DAVID MacMILLAN RESIDENCE TRUST

9.30    Power to Transfer Trust to or from Another Jurisdiction.  The Trustee shall have the power to remove any and all of the Trust Estate of any Trust created hereunder to or from any state of the United States, the District of Columbia or any foreign jurisdiction.  Upon such removal, the laws and courts of such other jurisdiction shall govern the administration of the Trust, unless and until its removal therefrom or distribution.  The Trustee shall have the power, from time to time, to change the jurisdiction of this Trust and, in such event, the laws and courts of such other jurisdiction shall govern the administration of the Trust, unless and until the Trustee changes jurisdiction again.

9.31    Power to Initiate and Defend Litigation; Power to Compromise Claims.

(a)    The Trustee may, in the Trustee's discretion, initiate or defend, at the expense of the Trust, any litigation relating to the Trust or any property of the Trust Estate that the Trustee considers advisable.  The Trustee's powers under this Paragraph shall apply during the term of the Trust and after distribution of Trust assets.  The Trustee shall have no duties, however, regarding any litigation or claims occurring after distribution of Trust assets, unless the Trustee is adequately indemnified by the distributees for any loss occasioned by exercise of these powers.

(b)    The Trustee may, in the Trustee's discretion, compromise, submit to arbitration, abandon, or otherwise adjust any claims or litigation against or in favor of the Trust.  The Trustee's decision in this regard shall be conclusive.  The Trustee's powers under this Paragraph shall apply during the term of the Trust and after distribution of Trust assets.  The Trustee shall have no obligation or duties, however, regarding any litigation or claims occurring after distribution of Trust assets, unless the Trustee is adequately indemnified by the distributees for any loss occasioned by exercise of these powers.

9.32    Environmental Matters.  In addition to all other powers, rights and privileges conferred on the Trustee under this Trust Agreement, the Trustee shall also have the following rights, powers and privileges with respect to environmental matters.

(a)    Inspection of Property and Records Prior to Acceptance.

(1)    Prior to acceptance of this Trust by any proposed or designated Trustee (and prior to acceptance of any asset by any proposed, designated or acting Trustee), such Trustee or proposed or designated Trustee shall have the right to take the following actions at the expense of the Trust Estate:

(A)    to enter, inspect and take samples for laboratory analysis from any existing or proposed Trust asset for the purpose of determining the existence, location, nature and magnitude of any past or present release or threatened release of any hazardous substance (as defined under any applicable federal, state or local environmental law or regulation) into, onto, beneath or from the asset; and

Page 35, DAVID MacMILLAN RESIDENCE TRUST

        (B)     to review records of the currently acting Trustee or of the Grantor (or of any partnership, limited liability company or corporation in which either the Trust or the Grantor holds an interest) for the purpose of determining whether the asset is in compliance with all federal, state or local environmental laws and regulations, including those records relating to permits, licenses, notices, reporting requirements and governmental monitoring of hazardous waste.

        (2)     The right of the Trustee or the proposed or designated Trustee to enter and inspect assets and records of a partnership, limited liability company or corporation under this Paragraph is equivalent to the right under state law of a partner, member or shareholder to inspect assets and records under similar circumstances.

        (3)     Acts performed by a proposed or designated Trustee under this Paragraph shall not constitute acceptance of the Trust.

        (4)     If an asset of the Trust is discovered upon environmental audit by any proposed or designated Trustee to be contaminated with hazardous waste or otherwise not in compliance with environmental law or regulation, the Trustee may decline to act as Trustee solely as to such asset, and accept the Trusteeship as to all other assets of the Trust. A court of competent jurisdiction shall appoint a receiver or Special Trustee to hold and manage the rejected asset under the preceding sentence, pending its final disposition. Any currently acting Trustee shall have the right to reject any asset proposed to be transferred to the Trustee.

        (b)     <u>Termination, Bifurcation or Modification of the Trust Due to Environmental Liability</u>.

        (1)     If the Trust Estate holds one or more assets, the nature, condition, or operation of which is an actual or threatened violation of any federal, state or local environmental law or regulation, the Trustee may take one or more of the following actions, if the Trustee, in its discretion, determines that such action is in the best interests of the Trust and its Beneficiaries:

        (A)     modification of the Trust provisions, granting the Trustee such additional powers as are required to protect the Trust and its Beneficiaries from liability or damage relating to actual or threatened violation of any federal, state or local environmental law or regulation;

        (B)     bifurcation of the Trust; or

        (C)     appointment of a Special Trustee to administer any Trust property or business which fails to comply with any federal, state or local environmental law or regulation.

Page 36, DAVID MacMILLAN RESIDENCE TRUST

(2)    With court approval, the Trustee may terminate the Trust or partially or totally distribute the Trust Estate to its Beneficiaries.

(3)    It is the intent of the Grantor that the Trustee shall have the widest discretion in identification of and response to administration problems connected to potential environmental liability to the Trust Estate and the Trustee, in order to protect the interests of the Trust, the Trustee and the Beneficiaries of the Trust.

(c)    Remedies.  The Trustee shall have the power to take, on behalf of the Trust, any action necessary to prevent, abate, or otherwise remedy any actual or threatened violation of any federal, state or local environmental law or regulation, relating to any asset, which is or has been held by the Trustee as part of the Trust Estate.

(d)    Indemnification of the Trustee from Trust Assets for Environmental Expenses.

(1)    The Trustee shall be indemnified and reimbursed from the Trust Estate for any liabilities, loss, damages, costs or expenses arising out of or relating to federal, state or local environmental laws or regulations, as amended from time to time (hereinafter "Environmental Expenses").

(2)    Environmental Expenses shall include, but shall not be limited to:

(A)    costs of investigation, analysis, removal, remediation, response or other cleanup costs of contamination by hazardous substances, as defined under any applicable federal, state or local environmental law or regulation;

(B)    legal fees and costs arising from any judicial, investigative or administrative proceeding relating to any federal, state or local environmental law or regulation;

(C)    civil or criminal fees, fines or penalties, incurred under any federal, state or local environmental law or regulation; and

(D)    fees and costs payable to environmental consultants, engineers or other experts, including legal counsel, relating to any federal, state or local environmental law or regulation.

(3)    The right to indemnification or reimbursement shall extend to Environmental Expenses relating to:

(A)    any real property or business enterprise which is or has been at any time owned or operated by the Trustee as part of the Trust Estate; and

Page 37, DAVID MacMILLAN RESIDENCE TRUST

(B)    any real property or business enterprise which is or has been at any time owned or operated by a corporation, partnership or association in which the Trustee holds or has held at any time an ownership or management interest as part of the Trust Estate.

(4)    The Trustee shall have the right to reimbursement for incurred Environmental Expenses without the prior requirement of expenditure of its own funds in payment of such Environmental Expenses, and shall have the right to pay Environmental Expenses directly from Trust assets.

(5)    This right of indemnification or reimbursement shall apply to all Environmental Expenses, except those resulting from the Trustee's intentional wrongdoing, bad faith or reckless disregard of fiduciary obligation.

(6)    If the assets of the Trust Estate are insufficient, or there is insufficient liquidity in the Trust Estate to satisfy the obligation of indemnification or reimbursement of the Trustee from the Trust Estate for Environmental Expenses, the Trustee shall have the right to request in writing indemnification or reimbursement for such Environmental Expenses directly from the Grantor and the Beneficiaries.

9.33    Discretion of Trustee.  Unless specifically limited, all discretions conferred upon the Trustee shall be absolute, and their exercise conclusive on all persons interested in the Trusts. The enumeration of certain powers of the Trustee shall not limit its general powers, the Trustee being vested with and having all the rights, powers and privileges with relation to the Trust Estate as could be exercised and executed by an individual holding and owning the same property in absolute and unconditional ownership.  All powers of the Trustee shall be exercised in a fiduciary capacity.  The Trustee shall not be liable to the Trust or to any Beneficiaries as a result of any losses, costs or damages of any kind, type or nature suffered or incurred by the Trust or by any Beneficiary resulting from the Trustee's reasonable actions taken in good faith, the actual result of which could not have been reasonably anticipated.

9.34    Power to Disclaim, Restrict or Enlarge Powers of Trustee.  The Trustee is authorized to disclaim, release or restrict the scope of any power that the Trustee may hold in connection with the Trusts created by this Trust Agreement, whether that power is expressly granted in the Trust Agreement or implied by law.  The Trustee shall exercise this power in a written instrument executed by the Trustee specifying the power to be disclaimed, released or restricted and the nature of the restriction.  In the event the Trustee may deem it advisable to have its authority and powers enlarged or extended for any reason or purpose, the Trustee is authorized to file an appropriate petition therefor in a court of competent jurisdiction, and the Trustee is authorized to comply with any order made in response to any such petition.

9.35    Prohibited Trust Powers.  The Trustee shall not have the power to purchase, exchange or otherwise deal with or dispose of the principal or the income of the Trust Estate for less than an adequate and full consideration in money or money's worth with respect to any

Page 38, DAVID MacMILLAN RESIDENCE TRUST

dealings with the Grantor or any other person.  The Trustee shall not have the power to lend the principal and/or income of the Trust Estate, directly or indirectly, without adequate security to any person other than the Grantor.  If the Grantor disclaims the right to borrow principal and/or income of the Trust Estate, as provided in Paragraph 9.16, then any loan to the Grantor thereafter must be adequately secured.  All loans of principal or income of the Trust Estate to the Grantor or any other person must bear adequate interest.  The Grantor shall not have the power to vote any stock of a controlled corporation (as defined by Section 2036(b) of the Internal Revenue Code) owned by the Trust.  Notwithstanding any other provision of this Trust Agreement (with the exception of the provisions of Paragraph 9.16 permitting the Grantor to borrow income or principal of the Trust Estate without adequate security), the Trustee is expressly prohibited from exercising any powers vested in the Trustee primarily for the benefit of the Grantor rather than for the benefit of the Beneficiaries.

ARTICLE 10

TRUST ADMINISTRATION:

10.1    Trust Administrative Provisions Set Forth in This Article.  The provisions set forth in this Article shall apply to the administration of any and all Trusts created pursuant to the provisions of this Trust Agreement.

10.2    Bond of Trustee.  No bond shall be required of any Trustee of any Trust created pursuant to the provisions of this Trust Agreement, regardless of residence and whether serving jointly or alone.

10.3    Compensation of Trustee.  Neither the Grantor nor the Spouse shall receive any compensation for serving as Trustee pursuant to this Trust Agreement.  Any other individual serving as Trustee or Co-Trustee shall be entitled to receive reasonable compensation for his or her services.  The compensation for a Corporate Trustee's services shall be in accordance with the Corporate Trustee's published fee schedule from time to time existing for the administration of similar trusts in the state of California.

10.4    Profits and Losses Charged to Trust.  The profits and losses arising from any activity of the Trustee as Trustee of any Trust created hereunder shall respectively inure to the benefit of or be charged against the respective Trust and not the Trustee.

10.5    Accrued and Undistributed Income.  Except as may otherwise be specifically provided herein, upon the death of any Beneficiary for whom a Trust is held, any accrued or undistributed net income of that Beneficiary's Trust shall be held and accounted for, or distributed, in the same manner as if it had been accrued or received after the death of that Beneficiary.  This Paragraph shall not be applicable to any income derived by any Trust created hereunder from an S Corporation (as defined in the Internal Revenue Code).

Page 39, DAVID MacMILLAN RESIDENCE TRUST

10.6   Payment of Expenses. The Trustee shall pay from income or principal of the Trust Estate, or partly from each, in its discretion, all expenses incurred in the administration of this Trust and the protection of the Trust against legal attack. Those expenses shall include reasonable attorneys' fees and compensation payable to the Trustee under the provisions of this Trust Agreement.

10.7   Disbursements in Good Faith. Unless the Trustee shall receive written notice of any birth, death or other event upon which the right to receive income or principal from a Trust may depend, the Trustee shall incur no liability for disbursements made in good faith to persons whose interests shall have been affected by that event.

10.8   Disclosure to Third Parties. Any transfer agent or other person dealing with the Trust (hereinafter referred to as "third party") shall be entitled to rely upon a copy of those portions of the Articles herein titled "POWERS OF TRUSTEE" and "TRUST ADMINISTRATION" setting forth the powers of the Trustee, which partial copy shall be certified as a true copy of those portions then in effect by the Trustee then acting. The third party shall incur no liability to the Trust or any Beneficiary hereunder for acting upon an order or request of the Trustee made pursuant to the terms hereof as set forth in the partial copy, and shall not be required to see to the disposition of any proceeds for the faithful discharge of the Trustee's duties hereunder. In no event shall any third party have access to a copy of the portion hereof setting forth the distribution of income and principal, except as may be determined in the absolute discretion of the Trustee. Alternatively, any such third party may rely upon a Certification of Trust by the Trustee given pursuant to Section 18100.5 of the California Probate Code or any similar provision.

10.9   Liability for Conduct of Co-Trustees, Predecessor Trustees and Successor Trustees. No Trustee or Co-Trustee shall be liable or responsible for any act, omission or default of any other Co-Trustee, predecessor Trustee or successor Trustee, as the case may be, provided that such Trustee or Co-Trustee shall have had no knowledge of that act, omission or default and no knowledge of facts which might reasonably be expected to put such Trustee or Co-Trustee on notice thereof.

10.10   Notification to Beneficiaries. The Trustee shall provide notification upon each and every date that there is a change in Trustees of any irrevocable trust created hereunder, to the extent that such notification may be required under the laws of the state of California then in effect. Such notification shall contain the information as required under, be served in a manner consistent with, and be provided to each Beneficiary of any Trust so affected and to any other person as may be required under, the laws of the state of California then in effect. The notification required by this Paragraph may not be waived in any manner by the Grantor, the Trustee or any Beneficiary of any Trust hereunder, unless permitted by law.

Page 40, DAVID MacMILLAN RESIDENCE TRUST

ARTICLE 11

PROVISIONS REGARDING
GENERATION-SKIPPING TRANSFER TAX:

11.1    Intention Regarding Generation-Skipping Transfer Tax.  The Grantor intends that
the Trustee shall perform (or refrain from performing) such acts as authorized pursuant to the
terms of this Trust Agreement, or otherwise, as the Trustee shall determine, in the Trustee's sole
discretion, with respect to any liability for the generation-skipping transfer ("GST") tax pursuant
to Section 2601 of the Internal Revenue Code, whether imposed upon the Grantor, the Estate of
the Grantor, any trust created by the Grantor, including without limitation the Trust or any
subtrust created hereunder, or any Beneficiary thereof, or upon any transferee or any other
person or entity, in order to minimize the aggregate liability with respect to all estate, inheritance
or other death taxes (including without limitation any GST tax) occasioned or payable by reason
of the death of the Grantor or otherwise arising as a result of transfers of property, whether
outright or in trust, made by or on behalf of, or which are otherwise attributable to, the Grantor,
whether during life or upon the death of the Grantor.

11.2    Duties Regarding Allocation of GST Tax Exemption.  The Trustee shall
cooperate with and otherwise assist the executor of the Will of the Grantor (or such other
persons who may make the election in the absence of an executor) in the allocation of all or any
portion of the Grantor's GST tax exemption (as defined in Section 2631 of the Internal Revenue
Code), or of a counterpart exemption under any applicable state law, which has not been
allocated during the Grantor's life.  The Grantor does not require that any allocation of the
Grantor's GST tax exemption benefit the transferees of any property equally, proportionally or in
any other particular manner.

11.3    Creation of Separate Trusts Based Upon Inclusion Ratio.  Notwithstanding any
other provision of this Trust Agreement, if all or a portion of the GST tax exemption is or is
anticipated to be allocated to any Trust created hereunder, unless that Trust will thereby have an
inclusion ratio (as defined in Section 2642 of the Internal Revenue Code) (the "Inclusion Ratio")
of zero, that Trust shall be divided into two or more separate Trusts so that each Trust so created
has an Inclusion Ratio of either zero (an "Exempt Trust") or one (a "Nonexempt Trust").  In so
dividing a Trust, the Trustee shall distribute to the Nonexempt Trust property equal in value to
the minimum amount necessary to establish that Trust with property in an amount necessary to
produce an Inclusion Ratio of one while leaving the Exempt Trust with property in an amount
necessary to produce an Inclusion Ratio of zero.  Further, if property in a Trust having a certain
Inclusion Ratio is directed to be added to a Trust with a different Inclusion Ratio, the Trustee
may decline to make the addition and, instead, may administer the property as a separate Trust
with provisions identical to the Trust to which it otherwise would have been added.

11.4    Power to Grant and Revoke General Testamentary Power of Appointment.  The
Trustee shall have the sole discretionary authority as to any Trust created hereunder having an
Inclusion Ratio greater than zero to (a) grant to any Beneficiary thereof a general testamentary

Page 41, DAVID MacMILLAN RESIDENCE TRUST

power of appointment (as defined for federal estate tax purposes) with respect to such Beneficiary's interest therein, if the Trustee deems, in the Trustee's sole discretion, such action to be in the best interests of the Beneficiaries of the Trust as a group, and (b) eliminate or otherwise revoke such power of appointment, if created. Any grant pursuant to this Paragraph may limit the amount subject to the power of appointment, may limit the class of permissible appointees of such Beneficiary's interest (including without limitation an appointment to only that Beneficiary's creditors), may require that the power of appointment be exercised jointly with another in a manner consistent with the objectives of the power or otherwise impose such conditions and limitations on its exercise as the Trustee shall determine. Any such grant pursuant to this Paragraph shall be in writing stating any limitations on the exercise of such power and the manner in which it may be exercised. The Trustee shall send a copy of such grant and any subsequent revocation of such grant to the Beneficiary who is the grantee of the power. The Trustee may exercise the powers described in this Paragraph from time to time, and the Trustee may modify or reverse their prior exercise at any time. If the Grantor or the Grantor's Spouse is acting as Trustee hereunder, then the powers conferred in this Paragraph 11.4 shall be exercisable by the Trust Protector, if any, and if none, then the next named successor Trustee.

11.5    <u>Powers and Duties Regarding Payment of GST Tax Liability</u>. If the Trustee determines that (a) any termination of an interest in or a power over Trust property constitutes a taxable termination pursuant to Section 2612(a) of the Internal Revenue Code, or (b) any distribution of Trust property constitutes a direct skip pursuant to Section 2612(c) of the Internal Revenue Code, the Trustee shall pay the amount of GST tax arising from such termination or distribution from the Trust property to which it relates, without adjustment of the relative interests of the Trust Beneficiaries. If the Trustee determines that any distribution from a Trust (other than pursuant to a power to withdraw or appoint) is a taxable distribution pursuant to Section 2612(b) of the Internal Revenue Code, the Trustee shall have the power, exercisable if and to the extent determined by the Trustee in the Trustee's sole discretion, to augment the distribution by an amount which the Trustee estimates to be sufficient to pay all or a portion of the GST tax arising as a result of such distribution and shall charge the amount of the augmentation against the Trust to which the distribution relates. In general, any payment required to be made pursuant to this Paragraph or otherwise by the reason of the death of, or an assignment by, the Grantor shall be charged, first, entirely, or to the extent possible, to a Nonexempt Trust. If any GST tax paid pursuant to this Paragraph is imposed in part by reason of Trust property and in part by reason of property not held as part of the Trust Estate, the Trustee shall only pay that portion of the tax which the value of the Trust property taxed bears to the total property taxed, taking into consideration deductions, exemptions and other factors which the Trustee deems pertinent, in the Trustee's sole discretion.

11.6    <u>General Powers Regarding GST Tax and Other Considerations</u>. All provisions of this Trust Agreement, except to the extent inconsistent with the objectives of the Grantor, shall be construed to permit the division, consolidation and administration of, and distributions from, the Trust in a timely manner consistent with the Grantor's objective of obtaining the efficient and effective use of the Grantor's available GST tax exemption and otherwise reducing the incidence of the GST tax and other death taxes. Except as expressly provided in this Trust Agreement to

Page 42, DAVID MacMILLAN RESIDENCE TRUST

the contrary, the Trustee shall have the sole discretionary authority to do any and all acts as the Trustee may deem necessary or desirable in furtherance of the Grantor's intentions, subject to the Trustee's fiduciary and other considerations, including without limitation the authority to:

(a)     allocate the burden of any GST tax in an equitable manner, whether or not pro rata;

(b)     pay or withhold any GST taxes levied upon any Trust from such sources of funds as the Trustee deems prudent and advisable;

(c)     make adjustments, unless otherwise restricted, in the amounts to be received by the Beneficiaries in compensation for the tax consequences of paying or otherwise allocating the burden of the GST tax;

(d)     make distributions to Beneficiaries from such sources of funds or other property as the Trustee deems prudent and advisable, unless otherwise restricted;

(e)     divide any Trust established or to be established pursuant to this Trust Agreement into separate Trusts; and

(f)     consolidate or otherwise combine separate Trusts:  (1) having identical Inclusion Ratios; or (2) having different Inclusion Ratios if the Trustee believes that economic efficiency or other compelling considerations justify sacrificing their distinct GST tax characteristics.

Except as expressly provided to the contrary in this Trust Agreement, if a Trust otherwise to be established is divided under the provisions of this Article into separate Trusts, each such subtrust shall have the same provisions as the Trust from which it was established and references in this Trust Agreement to such original Trust shall collectively refer to the separate subtrusts derived from it.  The Trustee may exercise the powers described in this Paragraph from time to time, and such powers may be used to modify or reverse their prior exercise.  In deciding whether and how to exercise these powers, the Trustee may take account of efficiencies of administration, GST and other transfer tax considerations, income tax factors affecting the various Trusts and their Beneficiaries, present and future financial and other objectives of the various Trusts and their Beneficiaries, the need or desirability of having the same or different Trustees for various Trusts or shares, and any other considerations the Trustee may deem appropriate.  There is no requirement that any acts taken to reduce the incidence of any tax occasioned or payable by reason of the death of the Grantor benefit the transferees of such property equally, proportionally or in any other particular manner.

11.7     Successor Trustee for Certain Purposes.  Notwithstanding anything herein to the contrary, the Trustee may not exercise any power granted pursuant to this Article including, without limitation, (a) the power to make or participate in any decision regarding the allocation of the Grantor's GST tax exemption and (b) the power to create, eliminate or modify any power

Page 43, DAVID MacMILLAN RESIDENCE TRUST

of appointment, in any way that would have the effect of granting the Trustee a general power of appointment (as defined for federal estate tax purposes) over property with respect to which the Trustee would not otherwise have such a general power. If this prohibition renders the Trustee unavailable to perform a duty or exercise a particular power, the person, persons or entity who would serve as successor Trustee to the Trustee shall serve as the Trustee for that limited purpose. If the successor Trustee so selected would similarly be prohibited from acting pursuant to the provisions of this Paragraph, the procedure provided in this Trust Agreement for selecting a successor Trustee shall be followed until a successor Trustee not so prohibited shall serve as Trustee for that limited purpose.

   11.8    Exoneration of Trustee. The Trustee shall not be liable for any good faith exercise of, or failure to exercise, the Trustee's powers pursuant to the provisions of this Article. In the event the Trustee's actions result in a detriment to one or more Beneficiaries or other transferees, it is the Grantor's intention that such Beneficiaries and transferees shall exonerate and otherwise hold harmless the Trustee with respect to such detriment.

   11.9    Simultaneous Death. Notwithstanding any provision in this Trust Agreement to the contrary, if pursuant to the terms of this Trust Agreement (a) property is to pass to or is to be held in trust for a lineal descendant of the Grantor (or of the Spouse or a former spouse of the Grantor) (a "Deceased Child") and (b) in the event of the death of such Deceased Child, such property is to pass to a further lineal descendant of the Grantor (or of the Spouse or a former spouse of the Grantor) assigned to a generation (as determined pursuant to the provisions of Section 2651 of the Internal Revenue Code) younger than the Deceased Child (a "Deceased Grandchild"), then, in the event that a Deceased Child and a Deceased Grandchild die simultaneously or under circumstances that make it difficult or impossible to determine their order of survival, the Trustee is hereby authorized to and shall presume, for purposes of this Article, that the Deceased Child and the Deceased Grandchild have died simultaneously.

ARTICLE 12

ACCOUNTINGS:

   12.1    Duty to Account. The Trustee shall render reports or accounts of the administration of the Trust Estate (individually, an "Account" and collectively "Accounts") in accordance with the provisions of this Article.

   12.2    No Court Accounts. Except as may otherwise be required by applicable law, the Trustee shall not at any time be required to render any Accounts to any Court or public authority whatsoever, or to anyone else, except as provided in this Article.

   12.3    During the Life of the Grantor.

      (a)    So Long as the Grantor is Not Incapacitated. During the life of the Grantor, and provided that the Grantor is not incapacitated, no Accounts need be rendered,

Page 44, DAVID MacMILLAN RESIDENCE TRUST

except upon the written demand of the Grantor. The Grantor's written approval of any and all Accounts during the life of the Grantor, and provided that the Grantor is not incapacitated, shall be final and conclusive with respect thereto as to all Beneficiaries (including unborn and contingent Beneficiaries) of the respective Trusts herein created.

(b)    If the Grantor Is Incapacitated. If the Grantor becomes incapacitated, the Trustee shall not be required to render Accounts to any person, except upon the written demand of the Grantor, or any person who may be acting as conservator of the estate of the Grantor or an agent acting under any form of a power of attorney executed by the Grantor.

In no event shall any such Accounts be delivered to any issue of the Grantor (unless such person shall then be acting as conservator of the estate of the Grantor or as an agent acting under any form of a power of attorney executed by the Grantor) or to any other person who might otherwise be or become a Beneficiary under this Trust.

12.4    After the Death of the Grantor. After the death of the Grantor, upon the written request of an Account Beneficiary (as that term is hereafter defined), but not more often than once each year, and/or upon a change of Trustee or termination of any Trust (or as otherwise required by law), unless specifically waived in writing by an Account Beneficiary, the Trustee shall render an Account of the Trust to all Account Beneficiaries of such Trust in the manner required by law. For purposes of this Article, the term "Account Beneficiaries" shall include the persons required by law to receive an Account of such Trust for which the Account is being prepared. A waiver in writing by an Account Beneficiary to an Account may be withdrawn in writing by such Account Beneficiary at any time as to the most recent Account and future Accounts. In the event an Account Beneficiary is a minor, the Account shall be delivered to the guardian of such Account Beneficiary. In the event the Account Beneficiary is an incapacitated adult, the Account shall be delivered to such incapacitated Account Beneficiary's conservator or, if there is none, then to such incapacitated Account Beneficiary's primary care provider.

12.5    Predecessor Trustees. When a predecessor Trustee has failed to render Accounts as required under this provision, the successor Trustee may, but need not, render Accounts for such period with reasonable efforts without incurring any additional liability for acts of a predecessor Trustee, other than as already provided under California law. This provision is intended to permit the successor Trustee to render Accounts for the predecessor without creating any additional duty to investigate or to Account. Nonetheless, if in the course of rendering Accounts left undone by the predecessor Trustee, the successor Trustee obtains knowledge of a situation that may constitute a breach of trust committed by the predecessor Trustee, the successor Trustee shall deal with such knowledge in accordance with the successor Trustee's fiduciary duties and powers. The Trustee may, but need not, petition a court of competent jurisdiction for approval of an Account, and all the costs and expenses of such a proceeding shall be a proper charge of the trust with respect for which the Account is rendered.

12.6    Receipts, Accounts and Releases. The Trustee may require a receipt from a Beneficiary for the portion of the Trust Estate to be paid to such Beneficiary. If any Beneficiary

Page 45, DAVID MacMILLAN RESIDENCE TRUST

refuses or neglects to furnish the Trustee with such written receipt, then the Trustee may, prior to making such distribution and at the expense of the appropriate Trust or Trusts, submit such matter to the Court of proper jurisdiction. The Trustee may, but need not, submit an Account to a Court of proper jurisdiction of the acts and doings of the Trustee then serving or any predecessor Trustee, and at the expense of the appropriate Trust or Trusts, in order to obtain a decree absolving the Trustee from all further liability hereunder after the making of such distribution. Alternatively, the Trustee may request from a Beneficiary a written release and discharge of the Trustee from all liability for any act, investment, transaction or distribution of the Trustee shown on that Account up to and including the date of such distribution, prior to making a distribution, if reasonable and appropriate under the circumstances, as determined by the Trustee, and permissible under applicable California law. If any Beneficiary refuses or neglects to release the Trustee upon terms acceptable to the Trustee, then the Trustee may, prior to making such distribution and at the expense of the appropriate Trust or Trusts, submit such matter to the Court of proper jurisdiction.

12.7    Settlement of Accounts. The Trustee shall be released from any liability with respect to a particular item disclosed in an Account or any claims adequately disclosed by any item in the Account, if the Trustee provides to the Beneficiary with the Account a written "Notice to Beneficiaries" in the form and manner required by California law, informing the Beneficiaries that they have one hundred eighty (180) days within which to object to the Account, and the Beneficiary fails to timely object to such item in the Account. Unless one (1) or more Beneficiaries shall deliver written objections to the Trustee within one hundred eighty (180) days from the date such Notice to Beneficiaries was received, the Account shall be deemed settled, and shall be final and conclusive in respect to all transactions disclosed in the Account as to all Beneficiaries of such Trust, including unborn and unascertained Beneficiaries. Notwithstanding anything to the contrary herein, nothing in this section is intended to relieve the Trustee of liability (1) for breach of trust committed intentionally, with gross negligence, in bad faith or with reckless indifference to the interest of the Beneficiary or (2) for any profit that the Trustee derives from a breach of trust.

12.8    Limited Waiver of Accounts. Except as provided in this Article, any Accounts otherwise required by California law are hereby waived to the maximum extent permitted by law.

ARTICLE 13

NO CONTEST CLAUSE:

13.1    General. The Grantor has intentionally made no provision in this Trust Agreement for any heirs or relatives of the Grantor who are not herein mentioned or designated, and the Grantor generally and specifically has intentionally omitted to provide for every person claiming to be or who may be determined to be an heir-at-law of the Grantor, except as otherwise mentioned in this Trust Agreement. If any Beneficiary, or any assignee or other successor in interest of a Beneficiary (a "Contesting Beneficiary") under a Protected Instrument

Page 46, DAVID MacMILLAN RESIDENCE TRUST

(as defined in this Article), singularly or in combination with any other persons, directly or indirectly, engages in any of the following contests without Probable Cause (as defined in this Article):

      (a)    a Direct Contest (as defined in this Article);

      (b)    files a Pleading (as defined in this Article) in any court to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer; or

      (c)    files a Creditor's Claim (as defined in this Article) or prosecutes any action based upon it in the Grantor's probate estate or against the Trustee of any subtrust created under this Trust Agreement or against a Beneficiary thereof;

then any share or interest in the Trust Estate and any subtrust created under this Trust Agreement, provided to or for the benefit of the Contesting Beneficiary, is revoked. In the event of such revocation, the revoked share or interest shall be disposed of as follows:

      (1)    if the Contesting Beneficiary is an individual, as though that Contesting Beneficiary had died without issue before becoming entitled to receive any income or any portion of the principal of such Trust; or

      (2)    if the Contesting Beneficiary is a charitable organization, to any one or more other charitable organizations which qualify for tax exemption under Section 2055(a) of the Internal Revenue Code and which meet the charitable intentions of the Grantor consistent with the provisions of this Trust Agreement (including, without limitation, any one or more of the charitable organizations named in this Trust Agreement which are not disqualified under this Article), as determined by the Trustee, in the Trustee's sole discretion.

The provisions of this Article shall not apply to any disclaimer by any person of any benefit under this Trust Agreement or under the Will of the Grantor.

    13.2   <u>No Contest Clause Definitions</u>. For purposes of this Article, the following terms have the following meanings:

      (a)    "Creditor's Claim" includes any action to enforce a contract to make a will, or an action asserting that the Grantor's property is liable to the claimant, other than a claim based on a debt incurred after the date of execution of this Trust Agreement or a claim for the Grantor's funeral expenses or last illness expenses.

      (b)    "Direct Contest" means a Pleading filed in any court that includes an allegation that a Protected Instrument or one or more of its terms is invalid, based on one or more of the following grounds:

Page 47, DAVID MacMILLAN RESIDENCE TRUST

(1)    Forgery;

(2)    Lack of due execution;

(3)    Lack of capacity;

(4)    Menace, duress, fraud or undue influence;

(5)    Revocation of a will pursuant to Section 6120 of the California Probate Code (or any successor section), revocation of a trust pursuant to Section 15401 of the California Probate Code (or any successor section) or revocation of any instrument other than a will or trust pursuant to the procedure for revocation that is provided by statute or by the instrument; or

(6)    Disqualification of a Beneficiary under Section 6112 of the California Probate Code (or any successor section).

(c)    "Pleading" means a petition, complaint, cross complaint, objection, answer, response or claim.

(d)    "Probable Cause" exists if, at the time of filing a contest, the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery.

(e)    "Protected Instrument" means all of the following instruments:

(1)    this Trust Agreement and any and all subtrusts created under this Trust Agreement, and any amendments to this Trust Agreement;

(2)    any other revocable or irrevocable trust established by the Grantor, and any amendments to any of the foregoing Trusts;

(3)    the Will of the Grantor or any codicil thereto;

(4)    any designation of beneficiary executed by the Grantor with respect to any insurance policy, annuity, individual retirement account, qualified or non-qualified employee benefit plan, plan of deferred compensation or other assets passing outside this Trust Agreement or the Will of the Grantor;

(5)    any written agreement between the Grantor and the Grantor's Spouse defining or altering their property rights as married persons, whether entered into prior to, concurrently with or after marriage;

Page 48, DAVID MacMILLAN RESIDENCE TRUST

(6)    any buy-sell agreements in which the Grantor is a party; or

(7)    any family partnership agreements or limited liability company operating agreements in which the Grantor is, or was, a party.

13.3    <u>Authorization of Trustee</u>.  The Grantor wishes to discourage a contest of the beneficial and administrative terms of this Trust Agreement.  Discouraging such a contest is an important trust purpose.  The Trustee may use assets of the Trust Estate to pay attorneys and other agents and to pay other costs and expenses to resist and defend any contest of this Trust Agreement or any of its provisions, any amendment to this Trust Agreement or any of its provisions, even if the contest does not attack the validity of the Trust, but instead its dispositive or administrative provisions.  In authorizing the Trustee to use assets of the Trust Estate for these purposes, the Grantor intends to override any fiduciary duty that might otherwise constrain the Trustee, including, but not limited to, the duty of loyalty, the duty of impartiality and the duty to avoid conflicts of interest.

13.4    <u>Costs of Defenses Charged Against Contesting Beneficiary</u>.  If the Trustee is successful in defending any matter or action described in this Article, as reasonably determined by the Trustee, but the distributions and/or allocations of interests in the Trust Estate to the Contesting Beneficiary under this Trust Agreement and/or the Will of the Grantor are not forfeited, all of the costs of such defense may be charged against the distributions and/or allocations of interests to the Contesting Beneficiary under this Trust Agreement and/or the Will of the Grantor, and all distributions and/or allocations of interests to the Contesting Beneficiary under this Trust Agreement and/or the Will of the Grantor may be reduced on a dollar-for-dollar basis by the aggregate net value as determined by the Trustee, of all real and personal property passing to or distributable to or for the benefit of the Contesting Beneficiary as a result of such matter or action, including, without limitation, assets of the Trust Estate or the probate estate of the Grantor, insurance proceeds, employee benefits and deferred compensation, all determined in the sole and absolute discretion of the Trustee, but only to the extent permitted by law.  In making any settlement of such matter or action, the Trustee shall consider the foregoing provisions of this Article.

ARTICLE 14

<u>GENERAL TRUST PROVISIONS</u>:

14.1    <u>Termination</u>.  Unless sooner terminated in accordance with other provisions of this Trust Agreement, each Trust created under this Trust Agreement shall terminate after the latest of:

Page 49, DAVID MacMILLAN RESIDENCE TRUST

(a)     twenty-one (21) years after the latest of:

(1)     the death of the Grantor;

(2)     the death of all of the issue (if any) of the Grantor who are living at the time of the execution of this Trust;

(3)     the death of the last survivor of any Beneficiary of the Trusts created hereunder and that Beneficiary's issue living at the time of the execution of this Trust; or

(b)     such later time as may then be allowed by law.

All principal and undistributed income of any Trust so terminated shall be distributed to the then income Beneficiaries of that Trust in the proportions in which they are, at the time of termination, entitled to receive that income. However, if the rights to income are not then fixed by the terms of that Trust, distribution under this Paragraph shall be made to the Beneficiaries as are then entitled or authorized in the discretion of the Trustee to receive payments from that Trust. In the event there are no Beneficiaries so entitled, the Trustee shall use any reasonable method to make the distribution required hereunder, as determined in the Trustee's discretion.

14.2    Spendthrift Provision. No interest of any Beneficiary of any Trust created in this Trust Agreement shall be subject to sale, assignment, hypothecation or transfer by any Beneficiary, other than in the exercise of a power of appointment given to the Beneficiary, nor shall the principal of any Trust, or the income arising therefrom, be liable for any debt of any Beneficiary, or be subject to attachment by or the interference by or control of any creditor of any Beneficiary, or be taken or reached by any legal or equitable process in satisfaction of any debt or liability of any Beneficiary, including without limitation the process of any court in aid of execution of any judgment so rendered. All of the income and principal under any Trust shall be transferable, payable and deliverable only to the designated Beneficiary at the time the Beneficiary is entitled to take under the terms of this Trust. The personal receipt of the Beneficiary may be made a condition precedent to the payment or delivery by the Trustee to that Beneficiary. The Trustee may, however, deposit in any bank designated in writing by a Beneficiary, to his or her credit, income or principal payable to that Beneficiary. This Article shall not restrict any authority of the Trustee to use and disburse funds for the support, maintenance, health and education of a Beneficiary, or to disburse funds to a guardian or conservator as herein provided.

14.3    Invalidity. If any part, clause, provision or condition of this Trust Agreement shall be adjudged to be invalid or unenforceable, then, notwithstanding the invalidity or unenforceability of that part, clause, provision or condition, the remainder of this Trust Agreement shall continue and shall remain in full force and effect and that part, clause, provision or condition shall be reduced in scope to the minimum extent necessary to avoid the invalidity.

Page 50, DAVID MacMILLAN RESIDENCE TRUST

14.4    <u>Governing Law</u>.  Subject to the Paragraph entitled "Power to Transfer Trust to or from Another Jurisdiction," the internal laws (and not the law of conflicts) of the state of California in force from time to time shall govern the validity, construction, interpretation and administration of this Trust, except that all matters relating to real property shall be governed by the laws of the situs of that real property, including that state's conflict-of-law principles.

14.5    <u>No Intent to Create Mutual Trusts</u>.  The Grantor is aware that the Grantor's Spouse may be executing a Trust on or about the same date as this Trust.  The Grantor's Trust and the Grantor's Spouse's Trust are not intended to be mutual Trusts and shall not be interpreted or construed to be mutual Trusts.  The Grantor's Trust and the Grantor's Spouse's Trust are not made pursuant to any contract or agreement of any kind whatsoever as to how any property shall be used or disposed of by either the Grantor or the Grantor's Spouse at any time, including at the time of the Grantor or the Grantor's Spouse's death.

14.6    <u>Disclaimers</u>.  Any Beneficiary shall have the right to disclaim all or any part of any interest in property to which he or she may be entitled under this Trust Agreement, by giving written notice of such disclaimer to the then-acting Trustee, to the adult Beneficiaries, to the guardians of any minor Beneficiaries and to the conservators of any incapacitated Beneficiaries; provided, however, that a failure to notify the adult Beneficiaries, the guardians of any minor Beneficiaries and the conservators of any incapacitated Beneficiaries regarding a Beneficiary's disclaimer shall not affect the validity or qualification of any disclaimer under any federal or state law.  The notice shall be delivered personally or by certified or registered mail, postage prepaid, return receipt requested.  Such disclaimer shall also in all respects comply with the applicable laws, rules, regulations and procedures, whether legislative, administrative, judicial or otherwise, as may be appropriate.  Except as otherwise provided herein, any interest so disclaimed shall be held or distributed as if the disclaimant was deceased as of the effective date of such disclaimer.  No other interest of the Beneficiary shall be affected by the disclaimer, unless that interest shall also be disclaimed.

14.7    <u>Headings and Captions</u>.  The headings and captions appearing at the commencement of the Articles and Paragraphs are descriptive only and for convenience in reference.  Should there be any conflict between any such heading or caption and the language of the Article or Paragraph over which the heading appears, the language of the Article or Paragraph, and not such heading or caption, shall control and govern in the construction of this Trust Agreement.

14.8    <u>Cross-References</u>.  All cross-references to Articles and Paragraphs contained in this Trust Agreement, unless otherwise specifically directed to another agreement or document, refer to provisions in this Trust Agreement and shall not be deemed to be references to any other agreement or document.

14.9    <u>Notices</u>.  Unless applicable law requires a different method of giving notice, any and all notices, demands or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if (a) served

Page 51, DAVID MacMILLAN RESIDENCE TRUST

personally, (b) deposited in the United States mail, certified or registered, postage prepaid return receipt requested, (c) delivered to Federal Express or other recognized overnight delivery service or (d) delivered by facsimile transmission, if concurrently transmitted by one of the methods identified in (a), (b) or (c) of this Paragraph. If such notice, demand or other communication is served personally, service shall be conclusively deemed made at the time of such personal service. If such notice, demand or other communication is given by mail, Federal Express or other recognized overnight delivery service, service shall be conclusively deemed given upon receipt (or refusal to accept delivery) as shown on the return receipt. If such notice, demand or other communication is delivered by facsimile transmission (and subject to the other requirements of subsection (d) of this Paragraph), notice shall be deemed given on the date of delivery by facsimile transmission, as confirmed electronically. Any notice, demand or other communication to be given hereunder shall be addressed to the party to whom such notice, demand or other communication is to be given at the last known address for that party or at the last known facsimile number. Any party hereto may change its address or facsimile number for the purpose of receiving notices, demands and other communications as herein provided by a written notice given in the manner aforesaid to the Trustee hereof.

## ARTICLE 15

### DEFINITIONS AND RULES OF CONSTRUCTION:

15.1    Definitions Set Forth in This Article. The following definitions and rules of construction shall apply to the terms listed in this Article wherever those terms are used in this Trust Agreement and wherever reference is made to those terms in this Trust Agreement.

15.2    Annuity Amount. The term "Annuity Amount" shall mean the amount payable to the Grantor calculated under Paragraph 4.5 in the event that all or part of the Trust Estate ceases to qualify as a qualified personal residence trust and a qualifying annuity trust is created pursuant to Paragraph 3.7 with such non-qualifying portion of the Trust Estate.

15.3    Beneficiary. The term "Beneficiary" shall be deemed to mean and is intended to include only those persons for whom a part of the Trust Estate has been apportioned. The term "Beneficiary" shall specifically not include any person who legally might be considered as a residuary or contingent Beneficiary, and any such person shall be considered as a "Beneficiary" only at such time as a part of the Trust Estate actually has been apportioned for his use and benefit in accordance with the terms and provisions of this Trust Agreement.

15.4    Corporate Trustee. The term "Corporate Trustee" shall mean a corporation, the trust department of a bank or the trust department of any title insurance company, which is authorized by state law to be engaged and act as a trustee.

15.5    Education. The term "education" shall be construed to include private preschool, elementary and secondary education (including instruction in music, art, computers, sports and physical education, and other subjects and topics, and whether conducted before, during or after

Page 52, DAVID MacMILLAN RESIDENCE TRUST

the regular school day, and wherever located or held), vocational training, college and postgraduate study (including professional education), so long as pursued to the advantage of a Beneficiary, at any recognized educational institution of a Beneficiary's choice; and in determining payments to be made for education, the Trustee shall take into consideration a Beneficiary's tuition, books, supplies, tutors, appropriate travel expenses and reasonable living expenses. Notwithstanding the foregoing, education shall not have any meaning broader than that allowed by Section 2041(b) of the Internal Revenue Code.

15.6    Gender or Number. The masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

15.7    Incapacity. The terms "incapacitated" or "incapacity," and the term "unable to serve" or equivalents thereof, as applied to any beneficiary or successor Trustee hereunder, shall be deemed to include not only a person who has been judicially declared incapacitated and a person for whom a guardian or conservator or other fiduciary of the person or estate or both shall have been appointed, but also a person who shall be deemed to have become substantially unable to (i) manage his or her own financial resources or (ii) resist fraud or undue influence.

(a)    That incapacity shall be evidenced by the written statement of two (2) licensed physicians upon the request of any beneficiary, Trustee or successor Trustee hereunder. In the case of a person who is serving as Trustee hereunder, the person or institution designated as next successor Trustee may commence acting in such capacity upon that evidence without liability by reason thereof. In case of temporary incapacity of a sole Trustee, the successor Trustee hereunder shall serve during the period of temporary incapacity as though he or she were the only Trustee. In case of temporary incapacity of a Co-Trustee, the other Co-Trustee shall make any and all decisions during the period of temporary incapacity as though that Co-Trustee were the only Trustee. Any person who has been determined to be incapacitated under the provisions of this Paragraph shall be deemed to have regained his or her capacity for all purposes of this Trust, including to resume acting as Trustee, upon a written statement to that effect by two (2) licensed physicians.

(b)    Each individual Trustee agrees to cooperate in any evaluation reasonably necessary for the purpose of determining capacity, agrees to waive the physician-patient privilege in respect to the results of such evaluation, and agrees to provide written authorization in compliance with the privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. Section 1320d) and the provisions of California Civil Code Section 56.10 for the disclosure and use of that Trustee's health information and medical records to the extent that such disclosure and use are necessary to make a determination of the Trustee's capacity. Refusal to submit to the evaluation, to provide the waiver, or to provide the written authorization when requested by the successor Trustee shall be deemed a resignation by that Trustee.

15.8    Initial Term. The term "Initial Term" shall mean the period commencing on the date of execution of this Trust Agreement and ending on the Termination Date.

Page 53, DAVID MacMILLAN RESIDENCE TRUST

15.9    Internal Revenue Code. Reference to code sections of the "Internal Revenue Code" shall refer to those sections of the Internal Revenue Code of 1986, as amended, as they exist at the time of execution of this Trust Agreement and any corresponding or substitute provisions from time to time existing and to the Treasury Regulations pertaining to those sections.

15.10    Issue; Child; Children. Subject to the provisions of the Paragraph titled "Declarations Concerning Family," the terms "issue," "child" and "children" shall mean lawful lineal descendants of all degrees, specifically including the following:

(a)    A child born outside of wedlock, if a parent and child relationship existed between such child and his or her deceased parent as determined under the laws of the state of California.

(b)    Adopted persons and their issue, provided that the person was adopted when he or she was a minor, and shall include any person conceived prior to the death of such person's deceased parent but born thereafter.

(c)    A person born as a result of artificial insemination, in vitro fertilization or other medical intervention, which person shall be deemed to be a genetic descendant of (1) the woman (other than a woman who was contractually serving as a surrogate mother) who gave birth to such person (the "birth mother") and (2) the birth mother's domestic partner at the time such person was conceived or implanted, unless there is clear and convincing evidence that the birth mother's domestic partner withheld consent to the medical intervention and did not subsequently voluntarily acknowledge parentage. In the event of any question whether (A) a birth mother's domestic partner withheld consent to a medical intervention for purposes of this Paragraph or (B) parentage has been voluntarily acknowledged for purposes of this Paragraph, then the determination of the Trustee (other than the birth mother or the putative parent) shall be binding on all persons interested in the Trusts hereunder and on all persons claiming to be so interested.

Unless expressly specified otherwise, distribution or apportionment to or among children and/or issue shall be made by right of representation.

15.11    Net Income. The term "net income" shall mean the income from the Trust Estate determined in accordance with this Trust Agreement and after the payment or reservation of sufficient funds to pay all expenses of management and administration of the Trust Estate, including the compensation of the Trustee.

15.12    Or. The word "or" used in any list of more than two items other than a list of Beneficiaries shall be construed to include the conjunctive as well as the disjunctive.

15.13    Qualified Corporate Trustee. The term "Qualified Corporate Trustee" shall mean a Corporate Trustee that has either (1) a combined capital and surplus (including the capital and

Page 54, DAVID MACMILLAN RESIDENCE TRUST

surplus of its affiliated entities) of at least One Billion Dollars ($1,000,000,000) or (2) assets under management (including assets under management by its affiliated entities) of at least Twenty-Five Billion Dollars ($25,000,000,000).

15.14   Spouse.  The term "spouse" shall include only persons who are lawfully married in any jurisdiction to the person whose spouse reference is made (or if the person to whose spouse reference is made is deceased at the time of interpretation hereunder, then the term "spouse" as it relates to such deceased person shall mean the person who was lawfully married in any jurisdiction to the deceased person at the time of such person's death).  Notwithstanding the foregoing, all references in this Trust Agreement to the capitalized term "Spouse" shall refer only to the spouse of the Grantor if at the time of interpretation hereunder such spouse of the Grantor was lawfully married to the Grantor (or if the Grantor is deceased at the time of interpretation hereunder, provided the spouse of the Grantor was lawfully married to the Grantor at the time of the death of the Grantor).  Upon divorce, the person who would otherwise have been a spouse or Spouse, as appropriate, shall be deemed to have died at the time of the divorce for all purposes of this Trust Agreement.

15.15   Support, Maintenance and Health.  The terms "support," "maintenance" and "health" shall have the same meanings in this Trust Agreement as those terms have under Section 2041(b) of the Internal Revenue Code.

15.16   Survival.  For purposes of this Trust Agreement, unless a specific period of survival is otherwise provided herein, a person shall be deemed to have survived the Grantor or shall be deemed to have been living at the date of the death of the Grantor only if such person survived the Grantor by at least ninety (90) days.  Unless such person has survived the Grantor by at least ninety (90) days, such person shall be deemed to have predeceased the Grantor.

15.17   Termination Date.  The term "Termination Date" shall mean the date on which a Termination Event occurs.

15.18   Termination Event.  The term "Termination Event" shall mean the earlier to occur of:  (1) the Grantor's death; or (2) the date that is sixteen (16) years from the date that the Residence is first contributed to the Trust.

15.19   Treasury Regulations.  Reference to Sections of the "Treasury Regulations" shall refer to those Sections of the Treasury Regulations promulgated under Code Sections of the Internal Revenue Code of 1986, as amended, as they exist at the time of execution of this Trust Agreement and any corresponding or substitute provisions from time to time existing.

15.20   Trust.  The term "Trust" shall specifically include any Trusts created hereunder.

15.21   Trust Estate.  The term "Trust Estate" shall be deemed to mean all of the property held in trust by the Trustee.

Page 55, DAVID MacMILLAN RESIDENCE TRUST

15.22   Trust Protector.  The term "Trust Protector" shall be deemed to include not only the singular, but also the plural, and to include any successor Trust Protector or Trust Protectors.

15.23   Trustee.  The term "Trustee" shall be deemed to include not only the singular, but also the plural, and to include any successor Trustee or Co-Trustees.

## ARTICLE 16

EXECUTION:

16.1   Declaration of the Grantor.  The undersigned Grantor does hereby certify that he has read this Trust Agreement and it fully and accurately sets out the terms, Trusts and conditions under which the Trust Estate herein described is to be held, managed and disposed of by the Trustee herein named, and he hereby approves, ratifies and confirms this Trust Agreement in all particulars.

16.2   Name of Trust.  The Trust shall for all purposes be known as:  the **"David MacMillan Residence Trust, established** _MARCH 2_____, 20_15_**."**

16.3   Execution by the Grantor.  Executed at _IRVINE_____, California, on _MARCH 2, 2015_____.

GRANTOR:

_David MacMillan_
David MacMillan

16.4   Execution by the Trustees.  The foregoing Trust Agreement has been accepted by the Trustees thereunder in the State of California.

TRUSTEES:

_David MacMillan_
David MacMillan

_Cynthia B. Martin_
Cynthia B. Martin

Page 56, DAVID MacMILLAN RESIDENCE TRUST

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                       )
COUNTY OF ORANGE       )

On _MARCH 2, 2015_ , before me, _MATTHEW ROSS HINES_ ,
Notary Public, personally appeared DAVID MacMILLAN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MATTHEW ROSS HINES
Commission # 2056767
Notary Public - California
Orange County
My Comm. Expires Feb 2, 2018

_____
Signature of Notary Public

(SEAL)

### CAPACITY(IES) CLAIMED BY SIGNER(S):

[X] Individual(s)                    [ ] Attorney-In-Fact
[ ] Partner(s)                       [ ] Subscribing Witness
[X] Trustee(s)                       [ ] Guardian/Conservator
[ ] Corporate _____        [ ] Other:_____
    Officer(s) _____
              _____    _____
              Title(s)               _____

### SIGNER IS REPRESENTING:

Name of Person(s)        **DAVID MacMILLAN**
or Entity(ies):

Name of Instrument:      **DAVID MacMILLAN RESIDENCE TRUST**

Page 57, DAVID MacMILLAN RESIDENCE TRUST

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA   )
                      )
COUNTY OF ORANGE      )


On _MARCH 2, 2015_, before me, _MATThEW RoSS HiNES_, Notary Public, personally appeared CYNTHIA B. MARTIN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MATTHEW ROSS HINES
Commission # 2056767
Notary Public - California
Orange County
My Comm. Expires Feb 2, 2018

_____
Signature of Notary Public

(SEAL)

## CAPACITY(IES) CLAIMED BY SIGNER(S):

[ ]   Individual(s)               [ ]   Attorney-In-Fact
[ ]   Partner(s)                  [ ]   Subscribing Witness
[X]   Trustee(s)                  [ ]   Guardian/Conservator
[ ]   Corporate _____      [ ]   Other:_____
      Officer(s) _____      _____
                      Title(s)     _____

## SIGNER IS REPRESENTING:

Name of Person(s)
or Entity(ies):        **CYNTHIA B. MARTIN**

Name of Instrument:    **DAVID MacMILLAN RESIDENCE TRUST**


Page 58, DAVID MacMILLAN RESIDENCE TRUST

88

## SCHEDULE OF PROPERTY

The property commonly known as:  201 Spindrift Drive, Rancho Palos Verdes, California

Page 59, DAVID MacMILLAN RESIDENCE TRUST